BITUMINOUS COAL OPERATORS'
ASSOCIATION, INC., Plaintiff,

v.

Ray MARSHALL, Secretary of
Labor, Defendant,

United Mine Workers of America,
Intervening Defendant.

Civ. A. No. 78–0731.

United States District Court,
District of Columbia.

Jan. 11, 1979.

---

Harold R. Schmidt, Thomas J. Whyte, Henry McC. Ingram, Pittsburgh, Pa., Alan B. Mollohan, Guy Farmer, Washington, D. C., for plaintiff.

Anthony J. Steinmeyer, Raymond M. Larizza, Washington, D. C., for defendant Secretary of Labor.

Harrison Combs, Mary Lu Jordan, Washington, D. C., for intervenor-defendant UMW.

## MEMORANDUM OPINION

GESELL, District Judge.

This case presents a pre-enforcement challenge to an Interpretative Bulletin which was published in the *Federal Register* on April 25, 1978, by the Assistant Secretary of Labor for the Mine Safety and Health Administration. Plaintiff, the Bituminous Coal Operators' Association, Inc., represents a large number of coal mine operators. The defendants are the Secretary of Labor, Ray Marshall, and, as intervenors, the United Mine Workers of America. The matter is now before the Court on cross-motions for summary judgment. Argument having been heard, the Court now enters its decision.

### I.

The Federal Mine Safety and Health Amendments Act of 1977 (the "Act"), Pub.L. 95–164, 91 Stat. 1290 (1977), extensively amended the Federal Coal Mine Health and Safety Act of 1969, Pub.L. 91–173, 83 Stat. 742 (1969), and the Federal Metal and Nonmetallic Mine Safety Act, Pub.L. 89–577, 80 Stat. 772 (1966). The 1977 Act strengthened the earlier law to ensure the safety of mines and created a new system for the enforcement of safety and other standards.

Section 103(f) of the Act, 30 U.S.C. § 813(f) (the "walkaround provision") stands at the center of the plaintiff's case. That provision states in pertinent part that:

> Subject to regulations issued by the Secretary, a representative of the operator and a representative authorized by his miners shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any coal or other mine made pursuant to the provisions of subsection (a) of this section, for the purpose of aiding such inspection and to participate in pre- or post-inspection conferences held at the mine. . . . Such representative of miners who is also an employee of the operator shall suffer no loss of pay during the period of his participation in the inspection made under this subsection. To the extent that the Secretary or authorized representative of the Secretary determines that more than one representative from each party would further aid the inspection, he can permit each party to have an equal number of such additional representatives. However, only one such representative of miners who is an employee of the operator shall be entitled to suffer no loss of pay during the period of such participation
>
> . . . . .

Subsection (a) of Section 103 of the Act establishes that the Secretary of Labor (the "Secretary") or his designee is to "make frequent inspections and investigations in coal or other mines each year for" four designated purposes, and at least four inspections per year must be conducted to achieve two of those purposes. 30 U.S.C. § 813(a).

On April 25, 1978, the Secretary published an "Interpretative Bulletin," *see* 43 Fed. Reg. 17546–49, which stated that:

The purpose of this Bulletin is to make public certain interpretations of section 103(f) of the Act, which will guide the Secretary of Labor in the performance of his duties thereunder unless and until otherwise directed by authoritative decisions of the Federal Mine Safety and Health Review Commission . . ., or of the courts, or until the Secretary concludes, upon reexamination of an interpretation, that modification is appropriate. 43 Fed.Reg. 17546.

Plaintiff requests that this Court nullify this Bulletin as having been promulgated in contravention of the notice-and-comment provisions of 5 U.S.C. § 553. Alternatively, plaintiff requests that the Court declare various aspects of the Bulletin void as inconsistent with Section 103(f) of the Act or as unconstitutional. In particular, plaintiff attacks the following positions taken by the Secretary in the Bulletin: (1) that the "walkaround provisions" of Section 103(f) are not limited to the four mine inspections mandated by § 103(a), 43 Fed.Reg. at 17549, but rather attach whenever an inspection is conducted which is made for one or more of the four purposes enumerated in § 103(a) and for which "the inspector is present at the mine to physically observe or monitor safety and health conditions as part of direct safety and health enforcement activity", 43 Fed.Reg. at 17548; (2) that inspections conducted under subsections (g) and (i) of Section 103 of the Act may frequently give rise to walkaround rights, 43 Fed.Reg. at 17547–48; and (3) that where several inspectors simultaneously inspect a mine to visit different locales within the mine, one representative of the miners may accompany each such inspector and be reimbursed for his lost pay, 43 Fed.Reg. at 17549.

## II.

■ The Court concludes that it lacks subject matter jurisdiction over all aspects of this case. The plaintiff correctly points out that denials of District Court jurisdiction are not to be lightly inferred. *See*

*Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Yet, clear and convincing evidence of a legislative intent that the District Courts are not to exercise jurisdiction over particular matters is sufficient to bar such jurisdiction, *id.,* at 141, 87 S.Ct. 1507, 1511, especially where other avenues for review are provided. Such an intent may be either express or implied by the "context of the entire legislative scheme." *Id.* The structure of the Act in this instance makes it quite clear that Congress intended that all legal challenges to the Act, to its enforcement and to any regulations promulgated thereunder be heard by the Federal Courts of Appeals, not by the Federal District Courts.

The Act contemplates that the Secretary issue citations and occasionally orders to mine operators when he has reason to believe that any mandatory safety and health regulation or any provision of the Act is being violated. Review of every such citation, once followed by a proposed penalty, and of every such order is vested first in the Mine Safety and Health Review Commission (the "Commission") and then in the Federal Courts of Appeals.[1] This avenue for review provides plaintiff's members with two fully adequate forums for the consideration of the claims plaintiff raises here. Penalties for violations of the "walkaround provision" now in dispute, whatever the Secretary may believe its meaning and effect to be, may be enforced only after such review has been completed.

The Act clearly sets out this avenue for judicial review. Section 103 of the Act, 30 U.S.C. § 813, establishes the inspection regimen which is to govern the Secretary in his enforcement of the protective provisions of the Act and sets out various other requirements relating to inspections, such as the walkaround rights at issue here. If, because of any inspection, the Secretary or his designee believes that the mine operator has violated either the Act or a mandatory

---

1. The Federal Courts of Appeals also have jurisdiction under the Act to review such mandatory safety and health standards as the Secretary may promulgate. Section 101(d) of the Act, 30 U.S.C. § 811(d).

health or safety standard, "he shall, with reasonable promptness, issue a citation to the operator," Section 104(a) of the Act, 30 U.S.C. § 814(a), which must specify "a reasonable time for the abatement of the violation." Id.[2] Once a citation has been issued, the Secretary "shall, within a reasonable time . . ., notify the operator . . of the civil penalty proposed to be assessed under" 30 U.S.C. § 820(a). Section 105(a) of the Act, 30 U.S.C. § 815(a). Section 110(a) of the Act, 30 U.S.C. § 820(a), mandates the proposed imposition of a civil monetary penalty of up to $10,000 for each and every violation found to exist by the Secretary. The operator has thirty days within which to contest the proposed penalty assessment; if it does so, all matters in dispute are then forwarded to the Commission. 30 U.S.C. § 815(d). If no challenge is made within the 30-day period, the proposed penalty assessment becomes final, subject to no administrative or judicial review. 30 U.S.C. § 815(a).

Proceedings within the Commission begin with a hearing before an administrative law judge ("ALJ"), who then issues a decision deciding all matters in dispute. Section 113(d)(1), 30 U.S.C. § 823(d)(1). The Commission, in its "sound discretion," may at that point review the ALJ's determination. Section 113(d)(2)(A)(i), 30 U.S.C. § 823(d)(2)(A)(i). A request that the Commission exercise such discretion may be made by any person "adversely affected or aggrieved by" the ALJ's decision and must be on any one or more of the following grounds:

> (I) A finding or conclusion of material fact is not supported by substantial evidence.

> (II) A necessary legal conclusion is erroneous.

> (III) The decision is contrary to law or to the duly promulgated rules or decisions of the Commission.

> (IV) A substantial question of law, policy or discretion is involved.

> (V) A prejudicial error of procedure was committed.

30 U.S.C. § 823(d)(2)(A)(i) & (ii). The Commission's ultimate determination or the ALJ's decision, whichever is final, constitutes "the final decision of the Commission", 30 U.S.C. § 823(d)(1); such a decision is exclusively reviewable in a Federal Court of Appeals. Section 106(a)(1) of the Act, 30 U.S.C. § 816(a)(1).

This scheme evidences a congressional desire that, when the Secretary acts in a manner which adversely affects an operator, the proper procedure for review of that act be to proceed first to the Commission and then to an appropriate Court of Appeals. Plaintiff correctly notes that the Act contains no directly applicable provision for the judicial review in a Federal Court of Appeals of regulations promulgated by the Secretary, where, as here, they are not mandatory safety and health regulations. Nonetheless, the Act does provide plaintiff with an adequate, though indirect, method to review the rulings contained in the Interpretative Bulletin here in question.

The Bulletin itself is not self-executing; it may adversely affect the interests of plaintiff's members only if it is actually relied upon by the Secretary in the issuance of citations and proposed civil penalty assessments. Once that occurs, the aforementioned exclusive avenue for review is triggered. The Secretary merely proposes penalties. If contested, they are unenforceable until passed upon by an ALJ or the Commission, and then by a Court of Appeals. In no sense can the Secretary's Interpretative Bulletin be deemed binding on any of those three forums. See *Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950).

The Act, moreover, does not limit the nature of the issues—be they factual or legal—which the Commission or the Courts of Appeals may entertain. Consequently,

---

**2.** Noncompliance with such an abatement order may result in an order that miners be withdrawn from the affected area of the mine pending abatement and may also entail daily civil penalties to be proposed at the discretion of the Secretary. Sections 104(b) & 110(b) of the Act, 30 U.S.C. §§ 814(b), 820(b).

all of the plaintiff's claims may be raised in those forums. This fact further supports the conclusion that the avenues of review provided by the Act are exclusive.

■ Also important is the fact that an operator need suffer no more than one civil penalty under 30 U.S.C. § 820(a) in order to trigger the Act's provisions for agency and court review. The Act clearly requires that every citation be followed by a proposed civil penalty. *See* 30 U.S.C. §§ 815(a); 820(a); S.Rep. No. 95–181, 95th Cong., 1st Sess. 41 (1977), *reprinted in* 1977 U.S.Code Cong. & Ad.News, 3401, at 3441. The Act, moreover, gives no suggestion that a proposed penalty becomes unreviewable once the underlying violation has been abated; yet, abatement vitiates the possibility of a company suffering any more than one civil penalty or a withdrawal order. Even were a mine operator to prefer non-abatement until the completion of the Act's review procedures, the Interpretative Bulletin notes that "actual withdrawal of miners will not *ordinarily* occur in cases arising under section 103(f)," 43 Fed.Reg. 17547 (emphasis in original), and it would seem improbable that stiff supplemental civil penalties would be imposed where a genuine interpretative question was raised as to section 103(f), a provision which normally is not absolutely vital to human health and safety. It should also be pointed out that an operator that pursued the prescribed route of review would in no way run the risk of criminal prosecution. *See* 30 U.S.C. § 820(d); H.R.Rep. (Conf.) No. 95–655, 95th Cong., 1st Sess. 57 (1977), *reprinted in* 1977 U.S.Code Cong. & Ad.News, 3485, at 3505. Since this statute is one that protects the health and safety of the nation's miners, and since section 103(f) can arguably be said to relate to that purpose, these review provisions cannot be deemed, on the present state of the record, to be unconstitutional. *See Toilet Goods Association v. Gardner,* 387 U.S. 158, 165, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *Ford Motor Co. v. Coleman,* 402 F.Supp. 475, 488–90 (D.D.C.1975) (three-judge court), *aff'd,* 425 U.S. 927, 96 S.Ct. 1656, 48 L.Ed.2d 170 (1976).

The Act's legislative history also contains statements evidencing a congressional desire that the District Courts not review the merits of orders and citations issued against operators. *See* S.Rep. No. 95–181, *supra,* at pp. 3416, 3440, 3443–45, 3448. Moreover, the Act explicitly provides for only two occasions when the District Courts may exercise jurisdiction and defines those occasions very narrowly. One such occasion is when the Secretary institutes an injunctive action against an operator. Section 108 of the Act, 30 U.S.C. § 818. The other is when an action is brought by the United States to collect such unpaid civil penalties as have been declared final. Section 110(j) of the Act, 30 U.S.C. § 820(j).

Significantly, were the District Courts to entertain actions such as this one, they would lack the aid of the Commission's experience and expertise. A case brought to a Court of Appeals, pursuant to 30 U.S.C. § 816, would, by contrast, usually enjoy the benefit of such aid. Most of the issues raised in the instant action are typical of the questions which Congress wished the Commission to decide in the first instance. Moreover, as tendered here, they could be more effectively considered in the light of some concrete factual circumstances, are in many respects entirely conjectural, and therefore must be deemed not sufficiently ripe for determination by this Federal Court. *See Abbott Laboratories v. Gardner, supra,* 387 U.S. at 148–54, 87 S.Ct. 1507.

### III.

For the aforementioned reasons, the complaint must be and hereby is dismissed.