AMERICAN COAL COMPANY, a corporation, Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF LABOR, MINE SAFETY AND HEALTH ADMINISTRATION et al., Defendants-Appellees.

No. 79–2239.

United States Court of Appeals, Tenth Circuit.

Argued Oct. 14, 1980.

Decided Jan. 21, 1981.

Daniel M. Allred, Salt Lake City, Utah (James B. Lee, Salt Lake City, Utah, with him on the brief), of Parsons, Behle & Latimer, Salt Lake City, Utah, for plaintiff-appellant.

Cynthia L. Attwood, Counsel, Appellate Litigation, Washington, D. C. (Carin Ann Clauss, Sol. of Labor, Washington, D. C., Morell E. Mullins, Associate Sol., and Debra L. Feuer, Atty., U. S. Dept. of Labor, Arlington, Va., with her on the brief), for defendants-appellees.

Before McWILLIAMS, DOYLE and McKAY, Circuit Judges.

McWILLIAMS, Circuit Judge.

American Coal Company, a Utah corporation, is a contractual operator of coal mines owned by Utah Power & Light Company and situate in Utah. On Sunday, April 8, 1979, a portion of the roof in the main west section of American Coal's Wilberg Mine, located in Emery County, Utah, collapsed. The collapsed area measured approximately 25 feet in diameter in a tunnel complex approximately 600 feet wide and two miles long.[1] No one was entrapped or injured as a result of the collapse of the roof. American Coal reported the incident to the Mine Safety and Health Administration (MSHA) on April 9, 1979. On April 10, 1979, one Dick K. Jones, a MSHA coal mine inspector, inspected the site. As a result of such inspection, Jones concluded that American Coal's roof control plan of 1977 was inadequate and he forthwith issued an order pursuant to Section 103(k) of the Federal Mine Safety and Health Act of 1977. 30 U.S.C. § 813(k) (1979). The effect of the order was to temporarily close all areas forward of the main west section dumping

---

1. This appeal arises from the district court's order in which it granted MSHA's motion to dismiss American Coal's complaint. This measurement, therefore, is based on the allegations contained in American Coal's complaint and on the exhibits appended thereto. We acknowledge, however, the Secretary of Labor's contention that the portion of the roof which collapsed measured more than 25 feet in diameter.

point until the roof control plan then in effect could be reevaluated. The order, in its entirety, read as follows:

> Because of an unintentional roof fall and adverse roof conditions throughout the main west working section the present approved roof control [plan] appears to [be] inadequate. Therefore until the present plan can be reevaluated all areas inby [forward of] the main west section dumping point is closed [sic]. A crew consisting of 10 employees and a supervisor for the purpose of supporting the roof and cleaning up the cave will be allowed on the section at any one given time.

American Coal's response to the order of Dick Jones, the coal mine inspector, was to bring an action on April 13, 1979, in the United States District Court for the District of Utah against the United States Department of Labor, the Mine Safety and Health Administration, and five named officials in that agency. The last named defendant was Dick Jones, the coal mine inspector, whose order precipitated this entire controversy. American Coal's action sought declaratory and injunctive relief and was based on the premise that the order made by Inspector Jones was not authorized by 30 U.S.C. § 813(k).

The defendants filed a motion to dismiss upon the ground that under applicable statutes the federal district court lacked subject matter jurisdiction, and that jurisdiction to review Jones' withdrawal order lay in the first instance with MSHA's Review Commission, subject to judicial review in a United States Court of Appeals. The trial court granted this motion, without comment insofar as the record before us is concerned. Also, the record before us does not indicate that the action itself was ever formally dismissed, only that the motion to dismiss was granted. Since none of the parties suggest that the present appeal is not properly before this Court, we elect to proceed on the premise that the trial court did, in effect, dismiss the complaint and the action.

American Coal now appeals the adverse ruling suffered by it. We affirm.

As indicated, the order of Inspector Jones was issued pursuant to 30 U.S.C. § 813(k). That statute provides as follows:

> In the event of any accident occurring in a coal or other mine, an authorized representative of the Secretary, when present, may issue such orders as he deems appropriate to insure the safety of any person in the coal or other mine, and the operator of such mine shall obtain the approval of such representative, in consultation with appropriate State representatives, when feasible, of any plan to recover any person in such mine or to recover the coal or other mine or return affected areas of such mine to normal.

American Coal's position is that 30 U.S.C. § 813(k) does *not* itself provide for administrative review of action taken pursuant to that statute, and that, such being the case, any action taken pursuant to that particular statute is subject to review by United States District Courts. We are not in accord with this argument. It is true that within the four corners of 30 U.S.C. § 813(k) there is no mention of review, be it administrative review or otherwise, of orders entered under the authority of that statute. We recognize that other sections of the Mine Safety and Health Act do specifically mention that action taken thereunder is subject to administrative review.[2] We do not believe, however, that merely because 30 U.S.C. § 813(k) makes no specific reference to administrative review, such omission means that there is no administrative review. A reading of the entire Act, coupled with its legislative history, leads us to conclude that the action taken by Inspector Jones under 30 U.S.C. § 813(k) was subject, first, to administrative review, with final action by the Review Commission to then be subject to judicial review in the appropriate Court of Appeals under 30 U.S.C. § 816. It is on this basis that we

---

**2.** Under Section 105 of the Federal Mine Safety and Health Act, 30 U.S.C. § 815(d) (1979), an operator may contest a citation or order issued pursuant to Section 104 of the Act, 30 U.S.C. § 814 (1979). An order issued under Section 107 of the Act may be contested before the Review Commission pursuant to the language of Section 107 itself. 30 U.S.C. § 817(e)(1).

conclude that the district court did not have subject matter jurisdiction.

Going directly to the legislative history of the Mine Safety and Health Act, *Legislative History of the Federal Mine Safety and Health Amendments Act of 1977*, S.Rep.No. 95–181, 95th Cong., 1st Sess. 13, *reprinted in* [1977] U.S.Code Cong. & Ad.News, pp. 3401, 3413 reads as follows:

A five member Mine Safety and Health Review Commission is created as a separate entity. The Commission is empowered to act in panels of three members. *The Commission serves as the ultimate administrative review body for disputed cases arising under the new mine safety act. An operator or affected party or employee representative may appeal to the Commission the issuance of a closure order or of any proposed penalty.* Miners or their representative, or Operators may contest to the Commission a citation issued to an operator that fixes an abatement period they believe is unreasonable. In all such cases, the Commission is to afford an opportunity for a hearing. Administrative Law Judges of the Commission shall hear matters before the Commission and issue decisions affirming, modifying or vacating the Secretary's order, proposed penalty or extending the abatement period set in the citation. A decision of an ALJ shall become the final order of the Commission within 40 days unless review is directed by the Commission. The Commission's review of a decision of the ALJ on appeal shall be discretionary. Two members of the Commission may authorize such review. The Commission may also review cases on its own initiative and remand cases to an ALJ for further proceedings where warranted.

Persons adversely affected by the Commission's final order may obtain a review of such order in any appropriate U. S. court of appeals. The Secretary may also obtain review or enforcement of any final order to the Commission in an appropriate U. S. court of appeals. (Emphasis added.)

In addition to the clear expression in its legislative history, we think the Mine Safety and Health Act itself contemplates that action taken by a coal mine inspector pursuant to 30 U.S.C. § 813(k) is initially subject to review within the agency, and not by a United States District Court. 30 U.S.C. § 823 establishes a Federal Mine Safety and Health Review Commission and spells out, in general terms, the administrative review process. 30 U.S.C. § 816 provides that persons aggrieved by a final order of the Review Commission may obtain a review thereof in a United States Court of Appeals. The only reference in the Act to the United States District Court appears at 30 U.S.C. §§ 818 and 820. Section 818 empowers the Secretary of Labor under certain described circumstances to institute a civil action in the United States District Court. Section 820 authorizes the commencement of a civil action in the name of the United States in the United States District Court to recover civil penalties previously imposed. Other than in those two sections, we find no other reference in the Act to the United States District Court. And, although it may not be controlling, we are advised that the Review Commission, as a practical matter, will, when called upon, review orders issued by a coal mine inspector under 30 U.S.C. § 813(k).[3] In sum, the Act does not specifically vest jurisdiction in the United States District Courts to review orders issued by a coal mine inspector under 30 U.S.C. § 813(k), and the Act itself, fortified by its legislative history, indicates quite clearly that action taken by a coal mine inspector under 30 U.S.C. § 813(k) is initially subject to review within the administra-

---

**3.** In *Eastern Associated Coal Corporation,* 5 IBMA 74 (1975), the Board of Mine Operations Appeals held that the Secretary of Interior had jurisdiction to review orders issued under Section 103(f) of the Coal Act, 30 U.S.C. § 813(f) (1976 ed.) which was the statutory predecessor to Section 103(k) of the Mine Act. This decision has remained in effect pursuant to 30 U.S.C. § 961(c)(2) (1979).

tive agency, with final orders subject to review by Courts of Appeals.

Though the background facts are not identical, we believe our interpretation of the Act to be in accord with the rationale of *Whitney Bank v. New Orleans Bank*, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965). In that case the Supreme Court stated that "where Congress has provided statutory review procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive. . . . To permit a district court to make the initial determination of a plan's propriety would substantially decrease the effectiveness of the statutory design."

*Bituminous Coal Operators' Ass'n v. Marshall*, 82 F.R.D. 350 (D.D.C.1979), involved the Federal Mine Safety and Health Act of 1977. In that case Judge Gerhard A. Gesell held that a legislative intent that district courts are not to exercise jurisdiction over particular matters may be implied by the context of an *entire* legislative scheme and that clear and convincing evidence of a legislative intent that district courts should not exercise jurisdiction over particular matters is sufficient to bar such jurisdiction, especially where other avenues of review are available. *Id.* at 352.[4]

Judgment affirmed.

---

4. We are aware of the Fourth Circuit's decision in *Bituminous Coal Oper. Ass'n v. Sec'y of Interior*, 547 F.2d 240 (4th Cir. 1977). In our view, however, that case is inapposite. There the Fourth Circuit held that the United States District Court did have jurisdiction to determine whether the Act authorized the Secretary of the Interior to cite coal mining companies for safety violations committed by construction companies employed by the mining companies. In the instant case there is no dispute concerning the applicability, as such, of the Act to American Coal. The dispute is over the propriety of the withdrawal order entered under the Act against American Coal.