**COUNCIL OF the SOUTHERN MOUNTAINS, INC., et al., Plaintiffs,**

v.

**Ray DONOVAN, Defendant,**

**Peabody Coal Company, et al., Intervenors-Defendants.**

**Civ. A. No. 79–2982.**

United States District Court, District of Columbia.

May 19, 1981.

L. Thomas Galloway, Richard L. Webb, J. Davitt McAteer, Washington, D. C., for plaintiffs.

Page H. Jackson, U. S. Dept. of Labor, Arlington, Va., for defendant.

Timothy M. Biddle, Todd D. Peterson, Washington, D. C., for intervenors-defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

This is an action under the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 801 *et seq.*, (the Act), in which plaintiffs, who are authorized representatives of miners under the Act, allege that the Secretary of Labor has failed to carry out certain of his obligations under the statute. More specifically, plaintiffs seek a judgment declaring that the Secretary is failing to issue or to cause to be issued citations and closure orders to mine operators in all situations in which section 104(d) of the Act, 30 U.S.C. § 814(d), requires them to be issued. Plaintiffs also seek injunctive relief, requiring the Secretary to issue the proper citations and orders.[1] The action is now before the Court on motions for summary judgment by defendant and defendants-intervenors.[2] Because this Court lacks jurisdiction under the statutory review scheme provided by the Act, and because the controversy is not ripe for judicial resolution, it will grant the motions for summary judgment and dismiss the complaint.

### I

Insofar as relevant here, the law contemplates two different types of citations for violations of mandatory health or safety standards.

Section 104(a), 30 U.S.C. § 814(a), provides that

If, upon inspection or investigation, the Secretary or his authorized representative believes that an operator of a coal or other mine subject to this chapter has violated this chapter, or any mandatory health or safety standard, rule, order, or regulation promulgated pursuant to this chapter, he shall, with reasonable promptness, issue a citation to the operator.

A section 104(a) citation also fixes a reasonable time for the abatement of the violation. If upon a follow-up inspection, the violation has not been abated within the time fixed in the citation (and the inspector determines that time should not be extended), an order is issued requiring that all persons be withdrawn from the areas of the mine affected by the violation. Section 104(b), 30 U.S.C. § 814(b).

Another type of citation is that authorized by section 104(d)(1), 30 U.S.C. § 814(d)(1), which states that

If, upon any inspection of a coal or other mine, an authorized representative of the Secretary finds that there has been a violation of any mandatory health or safety standard, and if he also finds that, while the conditions created by such violation do not cause imminent danger, such violation is of such nature as could significantly and substantially contribute to the cause and effect of a coal or other mine safety or health hazard, and if he finds such violation to be caused by an unwarrantable failure of such operator to comply with such mandatory health or safety standards, he shall include such finding in any citation given to the operator under this chapter. If, during the same inspection or any subsequent inspection of such mine within 90 days after the issuance of such citation, an authorized representative of the Secretary finds another violation of any mandatory health or safety standard and finds such violation to be also caused by an unwarrantable failure of such operator to so comply, he shall forthwith issue an order requiring the operator to cause all persons in the area affected by such violation . . . to be withdrawn from, and to be prohibited from entering [the affected area].

There are two prime differences between a citation under section 104(a) and a citation under section 104(d). First, a § 104(a) citation is required to be issued if the mine

---

1. Plaintiffs request an order directing defendant (a) to have the proper citations issued in the future; (b) to promulgate guidelines forthwith to ensure that the proper citations are issued; (c) to submit a plan within thirty days to ensure issuance of proper citations. Plaintiffs also ask the Court to retain jurisdiction over this action for an indefinite period in order to oversee defendant's compliance.

2. Defendants-intervenors are three mine operators.

inspector believes that the mine operator has violated the health and safety standards, whereas a § 104(d) citation is required to be issued if the inspector (a) finds a violation and (b) makes findings of "significant and substantial hazard" and of "unwarrantable failure" on the part of the mine operator.[3] Second, while upon issuance of a section 104(a) citation the mine will not be shut down if the violation is corrected during the time fixed by that citation, when a section 104(d) citation is issued the mine is required automatically to be shut down if a second violation caused by an "unwarrantable failure" to comply with standards is found during the same or subsequent inspections. Obviously, then, section 104(d) is the far more efficacious yet drastic remedy.

The basic claim made by plaintiffs is that in the period between May 30, 1978 and April 4, 1979, the Secretary issued fewer than 1,800 section 104(d) citations, while making the requisite findings for the issuance of such citations in over 70,000 instances. These section 104(d) findings, it is said, were made in the process of determining the amount of civil penalty to be assessed to mine operators who had received section 104(a) citations.

The procedural framework in which these determinations were made operates as follows. The Federal Mine Safety and Health Review Commission,[4] is authorized to assess various penalties,[5] based on proposals made by the Secretary, and taking into consideration a number of factors, including whether the operator was negligent and the gravity of the violation.[6] In preparation for making a proposed assessment under this sec-tion, a member of the Assessment Office of the Mine Safety and Health Administration examines the report of the inspector who issued the original citation and on the basis of that report he makes his own findings, including findings as to the negligence of the operator and the gravity of the cited violation. See 30 C.F.R. Part 100.

Plaintiffs claim that the portions of the assessor's report dealing with operator negligence and gravity of violation substantially correspond to the 104(d) findings of "significant and substantial hazard" and "unwarrantable failure." If that be true, they argue, whenever an assessor makes affirmative findings under the negligence and gravity categories in his report, then for all legal and practical purposes the 104(d) findings have been made and a section 104(d) citation must be issued.

II

Defendants make two procedural arguments in support of their motions for summary judgment: (a) that the Court lacks jurisdiction since the statutory scheme provides for all legal challenges to the Act to be brought first before the Federal Mine Safety and Health Review Commission, where decisions are reviewable only by the U.S. Court of Appeals, and (b) that the controversy is not ripe for judicial resolution.

A. Section 105(d), 30 U.S.C. § 815(d), provides that a mine operator or miner representative wishing to contest the issuance by the Secretary of a citation or an order shall be heard before the Commission. The

---

**3.** The parties appear to agree that if the section 104(d) findings of "significant and substantial hazard" and of "unwarrantable failure" are made, then the Secretary or his representative is compelled by the Act to issue a section 104(d) rather than a section 104(a) citation.

**4.** The Commission, established by Section 113 of the Act, 30 U.S.C. § 823, is an independent reviewing body patterned after the National Labor Relations Board. See S.Rep. No. 181, 95th Cong., 1st Sess., p. 47, U.S.Code Cong. & Admin.News 1977, p. 3401.

**5.** Under section 110 of the Act, 30 U.S.C. § 820, anyone violating a health or safety standard must be assessed a civil penalty of not more than $10,000, and anyone not correcting a violation for which a section 104(a) citation has been issued within the allotted time may be assessed a fine of $1,000 for each day the violation is not abated.

**6.** Other factors include the operator's history of previous violations, the size of the operator's business, the effect on the operator's ability to continue in business, and the demonstrated good faith of the person charged.

Commission may then modify or vacate the citation or order of the Secretary, or direct the award of other appropriate relief.[7] Decisions of the Commission are reviewed by the United States Court of Appeals. Section 106, 30 U.S.C. § 816.

The Supreme Court has held that "where Congress has provided statutory review procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive." *Whitney National Bank v. Bank of New Orleans*, 379 U.S. 411, 420, 85 S.Ct. 551, 557, 13 L.Ed.2d 386 (1965). The legislative history of the Federal Mine Safety and Health Act of 1977 makes it clear that the Commission is to serve as "the ultimate administrative review body for disputed cases arising under the new mine safety act," and that appeals from decisions of that body are to be entertained solely by the Court of Appeals. S.Rep. No. 181, 95th Cong., 1st Sess., p. 13; see also p. 47, U.S. Code Cong. & Admin.News 1977, p. 3413. Judge Gesell of this Court has concluded that the review procedures provided by the Act are exclusive, and that they leave the District Courts without jurisdiction over challenges to the Secretary's actions thereunder:

> The structure of the Act in this instance makes it quite clear that Congress intended that all legal challenges to the Act, to its enforcement, and to any regulations promulgated thereunder be heard by the Federal Court of Appeals, not by the Federal District Courts. *Bituminous Coal Operators' Association v. Marshall*, 82 F.R.D. 350, 352 (D.D.C.1979).

Upon that basis, this Court lacks jurisdiction of the instant action.

B. Even if the Court would have jurisdiction over plaintiffs' claim in exceptional circumstances despite the statutory scheme, plaintiffs here are faced with the further problem that they did not exhaust, indeed made no attempt to avail themselves of, their available administrative remedies. Nowhere do plaintiffs contend that any instance of improper issuance of a section 104(a) citation (rather than a section 104(d) citation) has been brought before the Commission, even though the Commission has the authority to "issue an order ... modifying or vacating the Secretary's citation ... or directing other appropriate relief." 30 U.S.C. § 815(d).[8] The Court would be denied the benefit of the agency's expertise and the factual record that would have been compiled below if it permitted plaintiffs to come to court without having taken advantage of their rights before the Commission.

---

7. Section 105(d) states that

  If, within 30 days of receipt thereof, an operator of a coal or other mine notifies the Secretary that he intends to contest the issuance or modification or an order issued under section 814 of this title, or citation or a notification of proposed assessment of a penalty ..., or the reasonableness of the length of abatement time fixed in a citation or modification thereof issued under section 104 of this title, or any miner or representative of miners notifies the Secretary of an intention to contest the issuance, modification, or termination of any order issued under section 814 of this title or the reasonableness of the length of time set for abatement by a citation or modification thereof issued under section 814 of this title, the Secretary shall immediately advise the Commission ..., and the Commission shall afford an opportunity for hearing ..., and thereafter shall issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's cita-

  tion, order, or proposed penalty, or directing other appropriate relief. 30 U.S.C. § 815(d).
  Any proceeding before the Commission is first assigned to an administrative law judge, whose decision becomes the final decision of the Commission 40 days after issuance, unless the Commission decides to review it. Review by the full Commission is not a matter of right, but is within the Commission's discretion. 30 U.S.C. § 823(d).

8. Plaintiffs claim that the statute precludes them from bringing this matter before the Commission, because section 105(d) (30 U.S.C. § 815(d)), while allowing a mine *operator* to contest the issuance of a citation, only permits a *miner representative* to contest the issuance of orders or of the abatement time fixed in a citation. *See* note 7, *supra.* The Court agrees with defendants, however, that this is a matter of the reach of the Commission's jurisdiction under the statute, which, in the first instance, should be addressed by the Commission itself and not by this Court.

■ C. Related to the exhaustion problem is that of ripeness. Defendants argue—correctly in the Court's view—that the case is not ripe for judicial review, because, as presented in the complaint, the issues are devoid of a concrete factual context, and would have to be judicially resolved in the abstract. The purpose of the ripeness doctrine, as enunciated by the Supreme Court, is

> to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49 [87 S.Ct. 1507, 1515, 18 L.Ed.2d 681] (1967).

When a case is not "ripe" for adjudication—that is, when the issues do not take the form of a present factual and legal controversy upon which the appropriate administrative agency has already ruled—the courts are reluctant to reach the merits. Under the *Abbott Laboratories* test, a court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." 387 U.S. at 149, 87 S.Ct. at 1515.

In the present case, the Court is not faced with particular factual instances of federal mine inspectors issuing section 104(a) citations in the face of section 104(d) findings; nor has the Commission considered the question of whether improper citations are being issued, either in specific cases or routinely. Instead, the claim is being made to the Court that the Secretary generally does not issue section 104(d) citations. The complaint asks the Court to determine the validity of the complicated allegations which underlie that claim without the benefit either of a concrete factual setting or of the Commission's prior consideration in light of the facts and its expertise.

In *Abbott Laboratories*, where the issues were "purely legal" and the government was not attempting to justify its behavior in factual terms, it was held appropriate for the court to resolve the issues without waiting for administrative proceedings. 387 U.S. at 149, 87 S.Ct. at 1515. Here, however, the Court must, if it rules on the merits, address the government's contention that the findings of the Assessment Office and those of the mine inspector are not equivalent—a task that would involve an examination of the possible differences in fact and in law between these findings in the context of the mining industry. Such examination would in the final instance be more appropriately performed by the Commission (which is of course directly familiar with the mining industry) than by a court.

■ D. Plaintiffs argue that, notwithstanding these various doctrines, their action should be entertained by this Court because it claims the existence of a pattern or practice by the Secretary in violation of his authority and because failure to entertain the action to stop this pattern of violation would work a hardship upon them. The miners, it is said, would be forced to expend huge amounts of time and money in bringing every single instance of an improper citation to the Commission's attention, and under these circumstances, the present action represents an appropriate shortcut.

The short answer to that argument is that plaintiffs do have an option before them that would not unduly tax their resources and that would allow them to litigate their basic legal and factual allegations in a concrete context: they can bring one instance of a section 104(a) citation having been wrongfully issued in place of a section 104(d) citation as a test case before the Commission. Such a test case would allow the application of the Commission's expertise to those threshold issues (such as the equivalency of findings by assessors and inspectors for section 104(d) purposes) which must be decided in plaintiffs' favor if they are eventually to prevail in their larger design. This course would not inflict substantial hardship upon plaintiffs in terms of expense or delay, and it is preferable to having the Court rule on a multitude

of instances of allegedly improper citations in a factual vacuum. Accordingly, in the interests both of judicial economy and informed decision-making, the Commission should have the first look.

Therefore, primarily on the grounds of lack of jurisdiction, but, in addition, because the dispute is not ripe for judicial resolution, summary judgment for defendant and defendants-intervenors will be granted, and the complaint will be dismissed.