969 F.2d 970
 125 Lab.Cas. P 10,661, 125 Lab.Cas. P 10,662,
1993 O.S.H.D. (CCH) P 30,031
 THUNDER BASIN COAL COMPANY, Plaintiff-Appellee,
v.
Lynn MARTIN, as Secretary, United States Department of
Labor; United States Department of Labor, William J.
Tattersall, as Assistant Secretary of Labor for Mine Safety
& Health; William Holgate, as District Manager Coal Mine
Safety and Health, District 9, Mine Safety and Health
Administration, and Mine Safety and Health Administration of
the United States Department of Labor, Defendants-Appellants.
 No. 91-8029.
 United States Court of Appeals,
Tenth Circuit.
 July 20, 1992.
Rehearing and Rehearing En Banc
Denied Aug. 28, 1993.
 
 Colleen A. Geraghty, Atty. (David S. Fortney, Deputy Sol. of Labor; Edward P. Clair, Associate Sol., W. Christian Schumann, Counsel, Appellate Litigation, with her on the briefs), U.S. Dept. of Labor, Arlington, Va., for defendants-appellants.
 Charles W. Newcom of Sherman & Howard, Denver, Colo. (Thomas F. Linn of Atlantic Richfield Co., with him on the brief), for plaintiff-appellee.
 Before LOGAN and TACHA, Circuit Judges, and COOK, District Judge.*
 LOGAN, Circuit Judge.
 
 
 1
 Defendants-appellants, including the United States Secretary of Labor and Mine Safety and Health Administration (MSHA), seek to overturn a preliminary injunction granted by the district court enjoining the Secretary of Labor from enforcing 30 C.F.R. pt. 40 against plaintiff-appellee Thunder Basin Coal Company (Thunder Basin). Although the parties discuss several issues concerning the propriety of the district court's grant of the preliminary injunction, we need address only one: whether the district court had subject matter jurisdiction to grant injunctive relief from enforcement of a regulation under Federal Mine Safety and Health Act of 1977 ("the Mine Act" or "the Act"), 30 U.S.C. § 801, et seq.
 
 
 2
 * 30 C.F.R. pt. 40 is a regulation issued under the Mine Act that establishes the procedure and administrative requirements for designation of a miner representative under the Act. See 30 U.S.C. § 813(f). The Mine Act requires frequent inspections of mines to gather and disseminate health and safety information and to determine compliance with health and safety standards. Id. § 813(a). A miner representative has the right to accompany the MSHA inspector on such inspections and the right to obtain an immediate inspection of the mine by MSHA if the representative has "reasonable grounds to believe that a violation of [the Mine Act] or a mandatory health or safety standard exists, or an imminent danger exists." Id. § 813(g)(1). The miner representative also enjoys other rights under the Mine Act. See id. § 819(b) (representative receives "copy of any order, citation, notice, or decision required by [the Mine Act]"); id. §§ 815(d), 817(e) (may contest issuance, modification, or termination of an order); id. § 813(f) (representative may participate in pre- or post-inspection conferences). Under the Mine Act, a miner representative may be a nonemployee of the mine being inspected. Utah Power & Light Co. v. Secretary of Labor, 897 F.2d 447, 450 (10th Cir.1990) (interpreting § 813(f)).
 
 
 3
 Thunder Basin operates a large coal mine with a nonunion work force. Certain of Thunder Basin's employees, exercising their rights under the Mine Act, designated two nonemployees to be their miner representatives.[1] These nonemployees of the mine were employees of the United Mine Workers of America (UMWA). Thunder Basin alleges that designation of the UMWA employees as miner representatives is an abuse of 30 C.F.R. pt. 40 because it is nothing more than a calculated attempt to forward the UMWA's efforts to unionize plaintiff's mine. Thunder Basin argues that requiring it to allow the UMWA employees access to its property and records in connection with an inspection violates its rights under the Labor Management Relations Act (LMRA), 29 U.S.C. § 141, et seq., to exclude union employees from access to Thunder Basin's records and property. It further argues that its constitutional due process rights would be violated if it is forced to risk substantial penalties before the merits of its legal arguments are heard.
 
 II
 
 4
 Whether a district court has subject matter jurisdiction is subject to de novo review. See City of Chanute, Kan. v. Williams Natural Gas Co., 955 F.2d 641, 658 (10th Cir.1992).
 
 
 5
 The federal district courts are courts of limited jurisdiction. See, e.g., Finley v. United States, 490 U.S. 545, 547-48, 109 S.Ct. 2003, 2005-06, 104 L.Ed.2d 593 (1989); City of Tacoma v. Taxpayers, 357 U.S. 320, 336, 78 S.Ct. 1209, 1218-19, 2 L.Ed.2d 1345 (1958). Congress may grant review of actions taken under a specific statute to an administrative agency, rather than to federal district courts. See Whitney Nat'l Bank v. Bank of New Orleans & Trust Co., 379 U.S. 411, 419-20, 85 S.Ct. 551, 557, 13 L.Ed.2d 386 (1965). "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." Block v. Community Nutrition Inst., 467 U.S. 340, 345, 104 S.Ct. 2450, 2453-54, 81 L.Ed.2d 270 (1984). Specifically in context of the Mine Act we have held that
 
 
 6
 a legislative intent that district courts are not to exercise jurisdiction over particular matters may be implied by the context of an entire legislative scheme and that clear and convincing evidence of a legislative intent that district courts should not exercise jurisdiction over particular matters is sufficient to bar such jurisdiction, especially where other avenues of review are available.
 
 
 7
 American Coal Co. v. United States Dep't of Labor, Mine Safety & Health Admin., 639 F.2d 659, 662 (10th Cir.1981) (citing with approval holding in Bituminous Coal Operators' Ass'n v. Marshall, 82 F.R.D. 350, 352 (D.D.C.1979)) (emphasis in original).
 
 
 8
 The Mine Act provides an extensive review process for challenges to actions taken under the Act. The usual procedure when a company refuses to comply with 30 C.F.R. pt. 40 is that it receives a citation, see 30 U.S.C. § 814(a), then an order, see id. § 814(b), and a proposed assessment of penalty, see id. §§ 815(a), 820. A citation, order, or proposed assessment of penalty may be contested before an administrative law judge (ALJ), id. § 815(a), (d), and thereafter appealed to the Federal Mine Safety and Health Review Commission (the Commission) for its discretionary review. Id. § 823(d)(2)(A)(i). After exhausting these administrative remedies, the Mine Act allows appeal of the Commission's final decision to a United States court of appeals whose factual review is limited to the administrative record.[2] Id. § 816(a)(1).
 
 
 9
 Thunder Basin, apparently to avoid a citation, order, and proposed assessment of penalty, filed a complaint in federal district court seeking an injunction. The district court granted a preliminary injunction preventing defendants from enforcing 30 C.F.R. pt. 40.[3] The district court found that the administrative review provided by the Mine Act was unnecessary in the instant case; that the agency has no special expertise to determine the alleged conflict between LMRA and MSHA or plaintiff's constitutional due process claim. See Order Denying Motion to Dismiss at 3-4, Appendix at 37-38.
 
 
 10
 This court, in American Coal, held that the Mine Act grants district courts subject matter jurisdiction in only the limited circumstances enumerated in 30 U.S.C. §§ 818, 820, and that actions taken under the Act should be challenged initially before the administrative agency in accordance with the administrative review procedures outlined in 30 U.S.C. § 816. See 639 F.2d at 660-62; accord Council of S. Mountains, Inc. v. Donovan, 516 F.Supp. 955, 959 (D.D.C.1981); United States Steel Corp. v. Marshall, 471 F.Supp. 438 (W.D.Pa.1979); Bituminous Coal Operators' Ass'n v. Marshall, 82 F.R.D. at 352-54. We based our holding on Congress' clear intent as evidenced by both the plain language of the Mine Act as a whole and the Act's legislative history. 639 F.2d at 660. We reaffirm that holding today.
 
 
 11
 The district court's view, allowing subject matter jurisdiction of Mine Act claims alleging constitutional violations and statutory conflict, finds support in Southern Ohio Coal Co. v. Donovan, 774 F.2d 693, 700 (6th Cir.1985), amended, 781 F.2d 57 (6th Cir.1986). Accord Zeigler Coal Co. v. Marshall, 502 F.Supp. 1326, 1329-30 (S.D.Ill.1980) (claim that § 815(c) violates plaintiff's constitutional due process rights may be determined by district court). In Southern Ohio, the Sixth Circuit held that district courts have jurisdiction to determine constitutionality of Mine Act rules and procedures, stating three reasons: (1) the Mine Act does not expressly deny district courts jurisdiction, 774 F.2d at 700; (2) "[q]uestions concerning the constitutionality of rules or statutes ... are not the type of questions that are within an agency's domain of expertise," and therefore the purpose for requiring initial review by the administrative agency is not served, id.; and (3) there is a "distinction between claims arising under an act and claims concerning the act itself," id.
 
 
 12
 This court rejected the first of Southern Ohio's justifications in American Coal. See 639 F.2d at 661-62. As to the others, we note that the Mine Act, in granting jurisdiction to ALJs, the Commission, and the courts of appeals, does not limit the bases upon which a party may challenge a citation, order or proposed assessment; the Act does not distinguish between challenges to orders based on constitutional grounds or conflict with other statutes and challenges based on misapplication of the Act itself. The Commission has demonstrated that it will consider constitutional challenges to the Mine Act. E.g., Secretary of Labor, Mine Safety & Health Administration (MSHA) v. Richardson, 3 F.M.S.H.R.C. 8, 18-21 (1981) ("It is our belief that the judicial role of the Commission ... permits the Commission to entertain constitutional objections to the underlying statute, especially where, as here, review in a United States court of appeals is available."), aff'd on other grounds, 689 F.2d 632 (6th Cir.1982); Secretary of Labor, Mine Safety & Health Admin. (MSHA) v. Alabama By-Products Corp., 4 F.M.S.H.R.C. 2128, 2129 (1982) (considering claim that regulation was unconstitutionally vague). ALJs and the Commission may not enjoy any special expertise enabling them to decide constitutional challenges to the Mine Act and construction of the Act with other laws, but review by the court of appeals is also part of the statutory scheme and that review is adequate to address both constitutional challenges and questions of conflict with other statutes. See United States Steel, 471 F.Supp. at 440 (Congress intended that constitutional and legal challenges to the Mine Act be heard by the courts of appeals and not the district courts); Utah Power & Light, 897 F.2d at 452 (following administrative appeals, court rejected argument that MSHA's interpretation of § 813(f) allowing nonemployee miner representatives violated operator's property rights).
 
 
 13
 Although we need not go beyond the precedent of American Coal and the language of the Act, we note that the Mine Act's legislative history lends special support to the view that Congress intended to strictly limit district courts' jurisdiction over Mine Act disputes. Among the motivations for enacting the Mine Act were concerns that the old laws did "not provide means to react quickly enough to newly manifested health hazards" and that civil penalties were "paid much too long after the underlying violation to effectively induce meaningful operator compliance." S.Rep. No. 181, 95th Cong., 1st Sess. 8 (1977), reprinted in 1977 U.S.C.C.A.N. 3401, 3408. The report specifically pointed to de novo trials in the district courts involving challenges to penalties as a reason for the delays and resulting inefficiencies under the prior laws.[4] In discussing the grant of jurisdiction to the courts of appeals, the report noted the "intention that penalty litigation move with no undue delay." Id. at 3440.
 
 
 14
 That Thunder Basin has not yet received a citation or proposed assessment of penalty is not controlling; the gravamen of Thunder Basin's case is a dispute over an anticipated citation and penalty. See Bituminous Coal, 82 F.R.D. at 351, 354 (finding no jurisdiction over preenforcement challenge). Operators may not avoid the Mine Act's administrative review process simply by filing in a district court before actually receiving an anticipated citation, order, or assessment of penalty. Cf., e.g., Southern Pines Assocs. v. United States, 912 F.2d 713 (4th Cir.1990) (no preenforcement challenges to EPA action under Clean Water Act); Union Elec. Co. v. EPA, 593 F.2d 299, 304-05 (8th Cir.) (no preenforcement challenges to EPA action under Clean Air Act), cert. denied, 444 U.S. 839, 100 S.Ct. 76, 62 L.Ed.2d 50 (1979).
 
 
 15
 Permitting district court jurisdiction on the basis of claims of constitutional violations or conflict with other statutes would permit preemptive strikes that could seriously hamper effective enforcement of the Act, disrupting the review scheme Congress intended. Challenges to regulations and provisions under the Mine Act are easily characterized in constitutional terms and as conflicting with other statutes. See, e.g., Utah Power & Light, 897 F.2d at 452 (argument that allowing nonemployees walkaround rights under § 813(f) infringes property rights); United States Steel, 471 F.Supp. at 439 (plaintiff alleged that complaint involving the Mine Act arose under the Fourth, Fifth, Sixth and Eighth Amendments and Administrative Procedure Act); Bituminous Coal, 82 F.R.D. at 352 (plaintiff claimed, inter alia, that bulletin giving interpretations of § 813(f) was in violation of 5 U.S.C. § 553 and was unconstitutional).
 
 III
 
 16
 We believe the Mine Act's review procedures are adequate to protect Thunder Basin's due process rights. A party, by disobeying the Mine Act or a regulation and then challenging the citation, order, or proposed penalty, is only penalized if the party loses on the merits of its claim. Thus a full and adequate hearing is provided before any penalty actually is imposed. See Nichiro Gyogyo Kaisha, Ltd. v. Baldrige, 594 F.Supp. 80, 83 (D.D.C.1984). Moreover, the Commission in determining the appropriate penalty must consider "the gravity of the violation," and "good faith ... in attempting to achieve rapid compliance." 30 U.S.C. § 820(i). If a party, in good faith, violates a regulation or provision of the Mine Act that in no way endangers the safety of its miners and challenges, albeit unsuccessfully, the citation, order, or proposed penalty through the proper procedure, such a violation is unlikely to prompt or support a substantial penalty. See Bituminous Coal, 82 F.R.D. at 354 ("[I]t would seem improbable that stiff supplemental civil penalties would be imposed where a genuine interpretative question was raised as to section (f), a provision which normally is not absolutely vital to human health and safety."). The Commission itself has said as much in a case factually close to the one before us, based in part on representations by the Secretary of Labor. See Secretary of Labor, Mine Safety & Health Admin. (MSHA) v. Mid-Continent Resources, Inc., 12 F.M.S.H.R.C. 949, 957 (1990).[5] In the instant case, the Secretary has made assurances that criminal penalties under these circumstances are unlikely. See Brief for the Secretary of Labor at 33-34. 30 U.S.C. *976s 820(d) imposes criminal penalties only in the event of a willful violation or knowing refusal to comply. See Bituminous Coal, 82 F.R.D. at 354 ("It should also be pointed out that an operator that pursued the prescribed route of review would in no way run the risk of criminal prosecution."); see also Wagner Seed Co. v. Daggett, 800 F.2d 310, 316 (2d Cir.1986) (willful "traditionally is synonymous with bad faith").
 
 
 17
 Thunder Basin points to defendants' actions concerning another nearby mine operator facing the same factual situation as is before us. There operator Kerr McGee Coal Corporation was threatened with the possibility of maximum daily penalties under 30 U.S.C. § 820(b) if it did not abate the violation. See Appendix 242-46. Threats of such penalties in the face of a bona fide interpretive dispute are indeed troubling. Such daily penalties, however, may be constitutionally valid so long as the operator "is accorded adequate opportunity to challenge their assessment at the administrative level before payment must begin." Duquesne Light Co. v. EPA, 698 F.2d 456, 469-70 n. 14 (D.C.Cir.1983). Also, although imposition of such a penalty was recommended by the district manager to the central office, whether central office actually approved the penalty is not clear; Kerr McGee abated the violation before the penalty was imposed. Appendix at 247. It seems questionable that either the Commission or a court of appeals would sustain a significant penalty on appeal even if approved by MSHA. See 29 C.F.R. § 2700.29(b) (ALJ and Commission not bound by penalty recommended by Secretary); Sellersburg Stone Co. v. Federal Mine Safety & Health Review Comm'n, 736 F.2d 1147, 1151-52 & n. 11 (7th Cir.1984) (same).
 
 
 18
 In any event, Thunder Basin may have the merits of its claims decided without risking substantial daily penalties. After receiving a citation it can abate the violation by complying, while proceeding with the appeals process. See Bituminous Coal, 82 F.R.D. at 354. Alternatively, if plaintiff chooses not to comply with an MSHA order, apparently it may still avoid risking daily penalties by pursuing an expedited hearing that requires only four days notice. See C.F.R. § 2700.52.
 
 
 19
 Further, we believe that a miner representative acting within the scope of his or her duties as defined in the Mine Act will not cause irreparable injury to plaintiff while plaintiff's litigation is pending. See Utah Power & Light, 897 F.2d at 452 ("the Act clearly spells out the purpose of a miners' representative's participation in an inspection"). We have no reason to assume that MSHA would allow the UMWA miner representatives to act beyond the scope of their rights outlined in the Mine Act. We conclude that the review provided for by Congress is adequate and exclusive.[6]
 
 
 20
 Utah Power & Light, 897 F.2d at 447, relied upon by Thunder Basin, is in no way inconsistent with the result reached here. In Utah Power & Light we held that a miner representative need not be an employee of the mine under § 813(f). Id. at 452. We referenced a hypothetical situation in which a UMWA employee might be named a miner representative "for purposes unrelated to the Act's safety objectives and thereby constitut[ing] an inappropriate exercise of the UMWA's designation right under § (f)." Id. (citation omitted). We stated that if § 813(f) was being abused, an operator's solution would be to "take action against individual instances of abuse when it discovers them." Id. We did not suggest that a district court would be the proper forum for taking action against such abuse. Instead, the operator must follow the procedures outlined in the Act. It can raise its concerns with MSHA; if MSHA still believes the designation is appropriate and the operator refuses to comply, it can get a citation and raise the issues before the ALJ, the Commission and a court of appeals.
 
 
 21
 The judgment of the district court is VACATED, and the case is REMANDED with instruction to dismiss the action for lack of subject matter jurisdiction.
 
 
 
 *
 The Honorable H. Dale Cook, Senior United States District Judge for the Northern District of Oklahoma, sitting by designation
 
 
 [1]
 As few as two miners may designate a mine representative. 30 C.F.R. pt. 40.1(b)(1). This provision helps assure representation of all miners, including members of minority groups and miners who may not be in total harmony with their co-workers
 
 
 [2]
 30 U.S.C. § 816(a)(1) states in relevant part:
 Any person adversely affected or aggrieved by an order of the Commission issued under this chapter may obtain a review of such order in any United States court of appeals for the circuit in which the violation is alleged to have occurred or in the United States Court of Appeals for the District of Columbia Circuit, by filing in such court within 30 days following the issuance of such order a written petition praying that the order be modified or set aside.... Upon such filing, the court shall have exclusive jurisdiction of the questions determined therein, and shall have the power to make and enter upon the pleadings, testimony, and proceedings set forth in such record a decree affirming, modifying, or setting aside, in whole or in part, the order of the Commission and enforcing the same to the extent that such order is affirmed or modified. No objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive.... [T]he jurisdiction of the court shall be exclusive and its judgment and degree [sic] shall be final, except that the same shall be subject to review by the Supreme Court of the United States, as provided in section 1254 of Title 28.
 Id. (footnote omitted).
 
 
 [3]
 The preliminary injunction has now been made a final injunction. We have before us Thunder Basin's motion to stay our determination of the appeal of the preliminary injunction and for its consolidation with the appeal of the permanent injunction. Because the parties had ample opportunity to argue the dispositive jurisdictional issue, we deny the motion for stay and consolidation
 
 
 [4]
 The Senate report explains:
 The Committee firmly believes that to effectively induce compliance, the penalty must be paid by the operator in reasonably close time proximity to the occurrence of the underlying violation. A number of problems with the current penalty assessment and collection system interfere with this. Final determinations of penalties are not self-enforcing, and operators have the right to seek judicial review of penalty determinations, and may request a de novo trial on the issues in the U.S. District Courts. This encourages operators who are not predisposed to voluntarily pay assessed penalties to pursue cases through the elaborate administrative procedure and then to seek redress in the Courts. Since the District Courts are still reluctant to schedule trials on these cases, and the Department of Justice has been reluctant to pursue such cases in the courts, the matters generally languish at that stage, and the penalties go uncollected.
 S.Rep. No. 181, 95th Cong., 1st Sess. 16 (1977), reprinted in 1977 U.S.C.C.A.N. 3401, 3416.
 
 
 [5]
 The opinion stated:
 Further, given the Secretary's assurance that, in the event of an operator's failure to abate an alleged violation of section 103(f) [30 U.S.C. § 813(f) ], withdrawal of miners will not ordinarily occur, it should not be expected that she would take the more extreme enforcement action of attempting to threaten to impose civil penalties upon a noncompliant operator pursuant to section 110(b) of the Act, 30 U.S.C. § 820(b), or criminal penalties pursuant to section 110(d) of the Act, 30 U.S.C. 820(d). We therefore believe that the fears in this regard expressed by counsel of Mid-Continent are not well-founded.
 Secretary of Labor, Mine Safety & Health Admin. (MSHA) v. Mid-Continent Resources, Inc., 12 F.M.S.H.R.C. 949, 957 (1990).
 
 
 [6]
 In arguing that the administrative remedy is inadequate Thunder Basin relies in part upon Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). In Gardner the Supreme Court permitted preenforcement judicial review of three regulations under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, et seq. after finding that nothing in the Act precluded such review. Id. at 168, 87 S.Ct. at 1527. The Court found that refusal to comply in order to challenge the regulations would result in exposure to "extensive" penalties and subject plaintiffs to possible criminal, seizure or injunctive suits. Id. at 172, 87 S.Ct. at 1529. The Court also recognized the "disastrous impact of an announcement that [plaintiffs'] cosmetics ha[d] been seized as 'adulterated,' " id., would have had upon plaintiffs' public good will. If plaintiffs did comply with the regulations and instead sought premarketing approval, the costs to plaintiffs allegedly would have been tens of millions of dollars. Id. at 173, 87 S.Ct. at 1529-30. Thus, the Court found that requiring compliance and foreclosing review at the preenforcement stage would inflict irreparable injury on plaintiffs. Id. at 173-74, 87 S.Ct. at 1529-30. In the instant case the threatened penalties and consequences of requiring postenforcement review are not nearly as severe as those in Gardner, and the alternative to risking significant penalties in the instant case would not result in irreparable injury to Thunder Basin