**SOUTHERN OHIO COAL COMPANY,**
(84–3910), U.S. Coal, Inc., (84–5688),
**Plaintiffs-Appellees,**

v.

**Raymond J. DONOVAN, Secretary of Labor; Federal Mine Safety & Health Administration; Federal Mine Safety & Health Review Commission; James A. Broderick and Paul Merlin, Defendants-Appellants.**

Nos. 84–3910, 84–5688.

United States Court of Appeals,
Sixth Circuit.

Argued July 9, 1985.

Decided Oct. 2, 1985.

Barry F. Wisor, U.S. Dept. of Labor, Office of Sol., Michael A. McCord, Arlington, Va., John W. Gill, U.S. Atty., Knoxville, Tenn., Mary-Helen Mautner, Steven J. Mandel (argued), U.S. Dept. of Labor, Office of Sol., Washington, D.C., for Donovan, et al.

R. Louis Crossley, Jr., D. Michael Miller (argued), Knoxville, Tenn., for U.S. Coal, Inc.

Francis X. Lilly, Sol. of Labor, U.S. Dept. of Labor, Karen I. Ward, Steven J. Mandel (argued), L. Joseph Ferrara, Acting Atty. Gen. Counsel, Federal Mine Safety & Health Review Com., Washington, D.C., for Secretary of Labor.

Alvin J. McKenna, Alexander, Ebinger, Fisher, McAlister & Lawrence, D. Michael Miller (argued), Columbus, Ohio, for Southern Ohio Coal Co.

Before KEITH, MERRITT and WELL-FORD, Circuit Judges.

WELLFORD, Circuit Judge.

This is a consolidated appeal from two separate district court decisions that held unconstitutional certain procedures of the Federal Mine Safety and Health Review Commission (the "Commission"). The Rule, 29 C.F.R. § 2700.44, permits the Secretary of Labor to require that coal mine operators temporarily reinstate miners who allegedly had been terminated for seeking enforcement of mine safety regulations. The Rule provides for this forced reinstatement without also providing the coal mine operators a prior hearing on the matter. Before turning to the merits of the parties' claims, however, we must address the serious questions concerning the district courts' jurisdiction over the original suits, and therefore this court's jurisdiction to hear the appeals.

The complaint in *Southern Ohio Coal Company v. Donovan*, No. 84–3910, was filed before the promulgation of the Commission's current Rule 44, but the district court adjudicated the constitutionality of current Rule 44 procedures. The underlying factual setting is fairly complex in this case. *U.S. Coal, Inc. v. Donovan*, No. 84–5688, concerns the constitutionality of the Commission's present Rule 44, and the factual setting is quite straightforward.

## I. The Regulatory Scheme

The Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 801, *et seq.* ("Mine Act") provides administrative review procedures to parties aggrieved by agency orders; review of the administrative decision may be had in the appropriate court of appeals.[1] *See generally* 30 U.S.C. §§ 814–817, 820, 823; 29 C.F.R. part 2700.

---

1. Section 818 permits the Secretary to seek relief "including a permanent or temporary injunction, restraining order, or any other appropriate order" in *district court* if the mine operator fails to abide by orders or decisions of the Commission. There is no parallel provision, however, under which a mine operator may

Relevant to the two cases on appeal is the Mine Act's proscription against:

discharg[ing] or in any manner discriminat[ing] against ... or otherwise interfer[ing] with the exercise of the statutory rights of any miner ... because such miner ... has filed or made a complaint under or related to [the Act], including a complaint notifying the operator ... of an alleged danger ... or because of the exercise by such miner ... on behalf of himself or others of any statutory right afforded by [the Act].

30 U.S.C. § 815(c)(1).

Upon a miner's timely complaint of unlawful discrimination, the Secretary must commence an investigation within 15 days of his receipt of the complaint. 30 U.S.C. § 815(c)(2). If the Secretary finds the "complaint was not frivolously brought," the Commission, "on an expedited basis upon application of the Secretary, *shall order* the immediate reinstatement of the miner pending final order on the complaint." *Id.* (emphasis added).

To implement this statutory mandate affording immediate temporary relief to miners, the Commission promulgated Rule 44

on June 29, 1979, setting forth the particular procedures for obtaining a Commission order of temporary reinstatement.[2] Under Rule 44,[3] the Secretary's application must state his finding that the discrimination complaint was not "frivolously brought" and must be accompanied by a copy of the miner's complaint, an affidavit setting forth the reasons for the finding, and proof of service upon the operator. The Secretary's application is to be examined on an expedited basis by an administrative law judge ("ALJ"), and "if it appears that the Secretary's finding is supported by the application and accompanying documents, an order of temporary reinstatement shall be immediately issued."

Under Rule 44 if a temporary reinstatement order is issued, an operator may request a hearing before an ALJ, which must be held within five days after the request is filed, to determine whether the complaint was "frivolously brought." An operator may also seek from the Commission interim relief from the temporary reinstatement order. Rules 45, 46, codified at 29 C.F.R. §§ 2700.45–2700.46 ("Rules 45, 46").[4] The

---

seek an injunction against the Commission in district court.

**2.** The temporary reinstatement order issued by the SOCCO case and challenged in SOCCO's complaint was entered on September 12, 1978, before the promulgation of Rule 44 by the Commission. The district court, however, determined the constitutionality of the current Rule 44 procedures.

**3.** Rule 44, 29 C.F.R. § 2700.44, provides in full:

§ 2700.44 **Temporary reinstatement proceedings.**

(a) *Contents of application; procedure; hearing.* An application for temporary reinstatement shall state the Secretary's finding that the miner's complaint of discrimination, discharge or interference was not frivolously brought and shall be accompanied by a copy of the miner's complaint, an affidavit setting forth the Secretary's reasons for his finding, and proof of service upon the operator. The application and accompanying documents shall be examined upon an expedited basis, and, if it appears that the Secretary's finding is supported by the application and accompanying documents, an order of temporary reinstatement shall be immediately issued. The

order shall be effective upon receipt or actual notice. If the person against whom relief is sought requests a hearing on the order, a Judge shall, within 5 days after the request is filed, hold a hearing to determine whether the miner's complaint of discrimination, discharge or interference was frivolously brought. The judge may then dissolve, modify or continue the order.

(b) *Dissolution of order.* If, following an order of reinstatement, the Secretary determines that the provisions of section 105(c)(1) have not been violated, the Judge shall be so notified and shall enter an order dissolving the order of reinstatement. If the Secretary fails to file a complaint within 90 days, the Judge may issue an order to show cause why the order of reinstatement should not be dissolved. An order dissolving the order of reinstatement shall not bar the filing of an action by the miner in his own behalf under section 105(c)(3) of the Act and § 2700.40 of these rules.

**4.** These Rules provide temporary relief in any proceeding prior to the issuance of a final order. Temporary relief, however, may not be granted prior to a hearing on the matter. 29 C.F.R. § 2700.45(c).

Commission, on its own motion or at the request of an aggrieved party, and in its "sound discretion," may review the ALJ's determination if a "substantial question of law, policy or discretion is involved." 30 U.S.C. § 823(d)(2)(A).

Except for good cause, all arguments made to the Commission must have been presented to the ALJ. 30 U.S.C. § 823(d)(2)(A)(iii) (Supp. II 1978 & Supp. V 1981). The Commission's ultimate determination, or the ALJ's decision in the absence of Commission review, is reviewable exclusively in the courts of appeals. 30 U.S.C. § 816(a)(1). "No objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." *Id.* The courts of appeals are given specific authority to grant temporary relief from Commission orders pending resolution of the proceeding. 30 U.S.C. § 816(a)(2).

In neither of the cases on appeal did the mine operator follow these prescribed procedures. Rather, in each case, the mine operator applied for a district court injunction against the Commission's reinstatement order.

## II. Underlying Factual Situation

### A. *SOUTHERN OHIO COAL COMPANY V. DONOVAN*

Southern Ohio Coal Company ("SOCCO") owns and operates an underground coal mine in Meigs County, Ohio. SOCCO clearly is an "operator" under the Mine Act. 30 U.S.C. § 802(d). Terry Hill worked as SOCCO's section foreman until June 7, 1978, when he was terminated allegedly for excessive absenteeism.[5]

On June 19, 1978, Hill filed a complaint with the Secretary of Labor alleging that his discharge was precipitated by his complaints to the operator concerning safety conditions in the mine. If true, SOCCO's termination of Hill would violate the Mine Act's prohibition against retaliatory discharges, 30 U.S.C. § 815(c). Hill had complained previously to company officials about both unsafe methane levels and roof conditions in the mine. Officials of the Mine Safety and Health Administration ("MSHA"), pursuant to 30 U.S.C. § 815(c)(2), undertook an investigation of the discrimination complaint, which included interviews with Hill as well as with other miners and supervisory personnel at the mine.

On September 12, 1978, upon completion of an initial investigation, the Secretary, pursuant to 30 U.S.C. § 815(c)(2), filed with the Commission an application for the temporary reinstatement of Hill to the position from which he had been terminated. The application, which was served upon SOCCO, contained the Secretary's determination that the Hill complaint was not frivolously brought. A Commission ALJ immediately issued an ex parte order requiring the operator to reinstate Hill to his former position as section foreman. SOCCO then filed the instant action on October 10, 1978. On May 11, 1979, the parties settled the merits of Hill's case. The settlement, in effect, provided that each party waive all claims he or it may have had against the other party.

In a rather detailed opinion and order, the district court, 593 F.Supp. 1014, held that the case was ripe for adjudication notwithstanding the subsequent promulgation of a new Rule 44, that the district court had jurisdiction to review because the agency had overstepped its authority, *citing Louisville and Nashville Railroad Co. v. Donovan*, 713 F.2d 1243, 1246 (6th Cir. 1983), and that Rule 44 was unconstitutional. In an earlier published order, *Southern*

---

5. Several months after being discharged, Hill testified at an unemployment compensation hearing that he had been diagnosed as suffering from a hernia condition. Mine Safety and Health Administration ("MSHA") officials did not learn, during the course of their investigation, that Hill had been so diagnosed. MSHA officials were made aware of SOCCO's concerns regarding Hill's physical condition soon after the temporary reinstatement order issued. As a result, the parties agreed that Hill should be "economically reinstated" rather than "physically reinstated." Thus Hill received full pay, but performed no work.

*Ohio Coal Co. v. Marshall,* 464 F.Supp. 450 (S.D.Ohio 1978), the district court had granted SOCCO's motion for a preliminary injunction. The district court did not consider that the settlement mooted the issues before it.

## B. *U.S. COAL COMPANY*

U.S. Coal operates an underground coal mine near Jacksboro, Tennessee, and is thus an "operator" under the Mine Act. 30 U.S.C. § 802(d). U.S. Coal employed John Campbell as a mine foreman from December 13, 1982 until January 13, 1984, when he was discharged for "inability to perform his assigned tasks." On February 13, 1984, Campbell filed a complaint with the Secretary of Labor alleging that his discharge was precipitated by his refusal to work under unsafe conditions and thus violated the Mine Act's prohibition against retaliatory discharges, 30 U.S.C. § 815(c).

On May 14, 1984, upon completion of an initial investigation, the Secretary, pursuant to 30 U.S.C. § 815(c)(2) and Rule 44, filed with the Commission an application for an order temporarily reinstating Campbell to his former position. On May 16, 1984, the Commission's ALJ ordered that U.S. Coal temporarily reinstate Campbell. U.S. Coal then requested a hearing to determine whether the miner's complaint of discrimination was frivolously brought. After requesting the hearing, but before it was held, U.S. Coal filed the instant suit.

On August 8, 1984, U.S. Coal and Campbell also settled the merits of Campbell's case.

### III. Mootness and Ripeness Concerns

SOCCO filed suit while the former Rule 44 was in force. The district court addressed this issue in its opinion by noting that "[a]lthough the regulations have changed, they still do not require a hearing prior to reinstatement." Indeed, the central due process challenge to the old Rule 44—that post-deprivation relief is inadequate to provide the process to which SOC-

CO is due—was not affected by the change in the rule.

■ As the SOCCO district court noted "[w]here there is a settled and definite government policy that has adversely affected the plaintiff's interests and continues to affect a present interest, declaratory relief is appropriate." Here, the primary complaint is the Secretary's refusal to give the mine operators any pre-deprivation hearing whatsoever before granting temporary reinstatement. This central (claimed) flaw in the procedures remained after the Secretary's Rule 44 amendments. Had this problem been changed by the amendments then SOCCO's action would not have been ripe since the current rule's procedures would not have been applied to SOCCO. In essence, however, the basic procedure underlying both the original and amended Rule 44 has been applied to SOCCO by the Secretary: SOCCO was forced to reinstate a terminated miner without a meaningful pre-deprivation hearing. The promulgation of an amended Rule 44 did not render SOCCO's lawsuit unripe for adjudication. *See Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 125–26, 94 S.Ct. 1694, 1699–1700, 40 L.Ed.2d 1 (1974); *Connolly v. Pension Benefit Guaranty Corp.,* 673 F.2d 1110, 1113 (9th Cir.1982).

Although the ripeness issue is present only in SOCCO's lawsuit, a question of mootness arises in both SOCCO's and U.S. Coal's lawsuit—in each case the company settled the merits of its dispute with the complaining miner. Of course, federal courts cannot render advisory opinions in moot cases. *International Union, UAW v. Dana Corp.,* 697 F.2d 718, 720–21 (6th Cir.1983). Yet as the Supreme Court has noted, the mootness doctrine is a flexible concept "with uncertain and shifting contours." *United States Parole Commission v. Geraghty,* 445 U.S. 388, 400–01, 100 S.Ct. 1202, 1210–11, 63 L.Ed.2d 479 (1980).

■ Were the dispute over the merits of the miners' complaints, then clearly the settlements entered into would moot an appeal.[6] *See e.g., Consumers Union of*

---

**6.** Had the dispute been over the merits of the

miners' complaints then the district court would

*the United States v. Kissinger,* 506 F.2d 136 (D.C.Cir.1974), *cert. denied,* 421 U.S. 1004, 95 S.Ct. 2406, 44 L.Ed.2d 673; *see also United Airlines, Inc. v. McDonald,* 432 U.S. 385, 400, 97 S.Ct. 2464, 2472, 53 L.Ed.2d 423 (1977) ("the settlement of an individual claim typically moots any issues associated with it") (Powell, J., dissenting). Decision on the merits is appropriate even after a settlement agreement is entered into by the parties if the court may award additional relief. *See, e.g., Doe v. Harris,* 696 F.2d 109 (D.C.Cir.1982); *Marshall v. Local 299, International Brotherhood of Teamsters,* 617 F.2d 154, 156 (6th Cir.1980); *see generally* Wright, Miller, and Cooper, *Federal Practice and Procedure* § 3533.2 (1984) ("The general rule is now well settled: the case is not moot unless the parties intended to settle, or unless it is not possible to take any effective action to undo the results of compliance.").

■ At the outset, we note that although the miners' actions and original claim were the genesis of the instant suit, the dispute at bar is between the coal mine operator and the Secretary of Labor, not between the operator and its miner. The injury of which the operators complain arises from the procedures applied by the Secretary. They are injured solely because of the lack of due process afforded them before they are required to reinstate discharged miners; the injury is present regardless of whether the miners' complaints ultimately are sustained or denied.

The Supreme Court addressed the question of mootness in *United States v. W.T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). In *W.T. Grant* the government appealed the dismissal of civil actions brought against a director who allegedly had violated the Clayton Act's proscription against interlocking corporate directorates. The district court had dismissed the suits upon the director's resignation from the various corporate boards.

The Court found the case not moot, holding that the case will be moot only "if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'" *Id.* at 633, 73 S.Ct. at 897. The court's power to grant injunctive relief was held to survive the discontinuance of the improper conduct, which was the origin of the proceeding. Rule 44 is still in force with its procedures intact. There *is* a reasonable expectation that the alleged wrongful and unconstitutional deprivation may be repeated. Furthermore, injunctive relief to prevent future deprivations of due process is appropriate and remains within the authority of the federal court to determine.

In *Northern Stevedoring & Handling Corp. v. International Longshoremen's Union,* 685 F.2d 344, 346 (9th Cir.1982) an appeal from a temporary restraining order against union picketing was held not mooted, although the NLRB had secured a preliminary injunction against the same picketing. If the NLRB ultimately held the picketing not to be an unfair labor practice, then the dispute between the employer and union could recur, and thus the case was not moot. In the instant case, the settlement between the miner and the coal operator would not preclude the Secretary from recurrently denying due process to the operators in similar cases.

Of particular importance to our holding that neither case was mooted by the mine operator's settlement with the complaining miner is our finding that the existence of Rule 44 continues to affect the mine operators' day to day business decisions. Continued application of the Rule may determine whether an operator will be willing to discharge one of its employees. *See Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974); *Dow Chemical Co. v. EPA,* 605 F.2d 673, 679 (3d Cir.1979); *Rosaly v. Ignacio,* 593 F.2d 145, 147 n. 3 (1st Cir.1979). Indeed,

have lacked jurisdiction in the first instance because of exclusive jurisdiction in the courts of appeals to review the Commissions' decision on the merits. It would be inconsistent to hold that the district court had jurisdiction to enter-

tain the lawsuits in the first place, and then to hold that settlements concerning the merits of the miners' complaints mooted the mine operators' action.

declaratory judgment would be appropriate in this instance. *See Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). The actions, then, present actual justiciable controversies.

We therefore hold that the settlement agreements entered into by the complaining miners and their employers do not moot this controversy between the mine operators and the Secretary of Labor.

### IV. District Court Jurisdiction

■ Under the Mine Act, the courts of appeals and not the district courts have jurisdiction to review the Commission's orders. 30 U.S.C. § 816. The Act, however, does not expressly preclude district court jurisdiction, *cf.* 42 U.S.C. § 405(h) (in claims arising under the Medicare Act, "No action against the United States, the Secretary, or any officer or employee thereof shall be brought under [§§ 1331, *et seq.*] of Title 28 to recover on any claim arising under this subchapter"). The Secretary argues that the exclusive grant of jurisdiction to the courts of appeals to review Commission orders precludes jurisdiction in district court to determine the constitutionality of the rules and procedures themselves. The mine operators, on the other hand, argue that the absence of an express limitation on the district courts' jurisdiction makes proper an adjudication of the constitutionality of the procedures, vis-a-vis a review on the merits of an order under those procedures.

In *Whitney National Bank v. Bank of New Orleans & Trust Co.,* 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965), the Supreme Court explained that the purpose behind limited statutory review of administrative decisions is "to permit agency expertise to be brought to bear on particular problems." *Id.* at 420, 85 S.Ct. at 557. Thus, when the issue to be adjudicated is one that is within the domain of agency expertise, then the statutorily provided judicial review procedure is exclusive. Questions concerning the constitutionality of rules or statutes, however, are not the type of questions that are within an agency's domain of expertise. Rather, responsibility to deal with questions of constitutional in-

terpretation lies in the federal courts, both at the trial and appellate levels.

The Supreme Court's decision in *Califano v. Sanders,* 430 U.S. 99, 108–09, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192 (1977), recognizes the distinction between claims arising under an act and claims concerning the act itself, and therefore supports the mine operators' argument in favor of district court jurisdiction. *Sanders* involved the question of whether the Administrative Procedure Act, 5 U.S.C. §§ 701–706 ("A.P.A."), provided an independent grant to the district courts of subject-matter jurisdiction to review the Secretary's decision in a social security case absent a prior hearing as required by the Social Security Act itself. The Court, in finding that the district court did not have jurisdiction, distinguished *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), and *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976): "[i]n both instances ... the claimants challenged the Secretary's decisions on constitutional grounds. Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions." 430 U.S. at 108–09, 97 S.Ct. at 985–86.

This Court similarly has recognized the difference between constitutional claims and claims under a particular act: "some residuum of federal question subject matter jurisdiction may exist in the United States District Court, although apparently otherwise precluded by a comprehensive statutory review scheme." *Louisville and Nashville Railroad Co. v. Donovan,* 713 F.2d 1243, 1246 (6th Cir.1983). Although holding that a district court lacked subject matter jurisdiction to enjoin the Secretary of Labor from applying the Black Lung Benefits Act to railroad employees, the *L & N R. Co.* court favorably cited Judge Spottswood Robinson's opinion in *Nader v. Volpe,* 466 F.2d 261 (D.C.Cir.1972), for the proposition that:

> when Congress has specified a procedure for judicial review of administrative ac-

tion, courts will not make nonstatutory remedies available without a showing of patent violation of agency authority or manifest infringement of substantial rights irremediable by the statutorily-prescribed method of review.

*Id.* at 1247. *See also Zeigler Coal Co. v. Marshall,* 502 F.Supp. 1326, 1329–30 (S.D. Ill.1980) (in construing the Mine Act the court held that "federal administrative agencies have no power to pass upon the constitutionality of administrative or legislative action"). In both cases before us, the district courts found that the due process challenges fell within the narrow circumstances alluded to in the *L & N R. Co.* case.

The analysis thus far concerns whether the district court had jurisdiction under 28 U.S.C. § 1331, federal question jurisdiction. Appellee alternatively argues that jurisdiction may lie under 28 U.S.C. § 1361, mandamus jurisdiction. Indeed, when the issue to be adjudicated is the type of hearing required, at least one circuit has held that jurisdiction does exist under 28 U.S.C. § 1361, with the action being in the nature of mandamus to compel the Secretary to perform a duty owed the plaintiff—*i.e.* grant it procedural due process. In *Ellis v. Blum,* 643 F.2d 68, 78 (2d Cir.1981), Judge Friendly held that jurisdiction to challenge social security procedures could be predicated upon § 1361 "to review procedures employed in administering social security benefits." *Id.* at 78. The *Ellis* analysis applies with equal force in the instant case, and suggests that jurisdiction did lie in the district courts to hear the constitutional claims. The operators' failure to exhaust administrative remedies, *see infra,* substantially weakens a claim for jurisdiction predicated upon § 1361, however, since the mandamus statute is intended to provide a remedy only if all other avenues of relief have been exhausted. *Heckler v. Ringler,* 466 U.S. 602, 104 S.Ct. 2013, 2022–23, 80 L.Ed.2d 622 (1984).

The absence of an express preclusion against district court review is significant in light of the Supreme Court's decision in *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), which itself seems to support the existence here of § 1331 jurisdiction. In *Ringer* the Court found that although plaintiffs had termed their challenge a procedural due process challenge, their claims were essentially claims arising under the Medicare Act. Since 42 U.S.C. § 405(h) expressly precluded district court review under 28 U.S.C. § 1331, the Court held plaintiffs' district court action barred for lack of subject matter jurisdiction. The reclassification of their challenge from a procedural claim to a claim arising under Medicare suggests that the Court may have permitted a bona fide procedural claim notwithstanding the express preclusion of district court review even with the express statutory withdrawal of § 1331 jurisdiction. *See also Schweiker v. McClure,* 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982), in which the Court permitted a due process challenge to the hearing process provided by 42 U.S.C. § 1395ff, notwithstanding 42 U.S.C. § 405(h) preclusion.

The claims made in the instant cases are bona fide claims against the procedure adopted by the Secretary of Labor under the Mine Act. As such, we find that the district courts indeed did have jurisdiction to hear the claims, at least against challenges premised upon the exclusive court of appeals jurisdiction to review claims on the merits.

## V. Failure to Exhaust Administrative Remedies

In neither of the instant cases did the mine operator first exhaust its administrative remedies prior to seeking judicial review of the reinstatement order. The Secretary thus argues exhaustion of administrative remedies as a bar to judicial review. The mine operators respond that since their claims concern the constitutionality of the Secretary's procedures, no special agency expertise is involved and therefore exhaustion of administrative remedies should not be mandated. The rationale behind the exhaustion of administrative remedies doctrine is analogous to the doctrine of

limited statutory review of administrative actions; its purpose is to permit an administrative agency to apply its special expertise in interpreting relevant statutes and in developing a factual record without premature judicial intervention. *See McKart v. United States*, 395 U.S. 185, 193–94, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969). If the pursuit of administrative remedies does not serve the purposes supporting the doctrine, then failure to exhaust should preclude judicial review. *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir.1981).

■ The Supreme Court's decision in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), supports the view that exhaustion is not required before a district court may entertain constitutional challenges to an agency's procedures. The mine operators' due process challenge here is entirely collateral to any substantive claims under the Mine Act. *See Mathews*, 424 U.S. at 330, 96 S.Ct. at 900. In that case the Court reached the merits of a social security claimant's case notwithstanding an admitted failure to exhaust statutory administrative remedies. *Id.* at 330, 332, 96 S.Ct. at 900, 901. The Court first noted that "[a] claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing," *id.* at 331, 96 S.Ct. at 900, and then held that denying the claimants' substantive claim "for other reasons" or "under other provisions" at a posttermination review would fail to answer his constitutional claim. *Id.* at 331–32, 96 S.Ct. at 900, 901. The cases before us present precisely the same situation. If the Secretary were to determine after the reinstatement hearing that reinstatement were indeed warranted on the facts before it, then the due process claim would never be reached. Thus, as far as those due process claims are concerned, it is irrelevant whether the administrative remedies were exhausted.

Clearly if no agency expertise is needed to decide the legal issue involved, and an adequate factual record has been compiled, then failure to exhaust should not bar judicial review. *See, e.g., Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975):

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

The Secretary argues that since it already entertained a constitutional challenge to its own procedural rules, *see Secretary of Labor v. Kentucky Carbon Corp.*, No. KENT 80–145–D (July 23, 1981), this court should again permit it to correct its own mistake by requiring the operators to exhaust administrative remedies. The *Kentucky Carbon* decision, however, militates against forcing the operators to subject themselves to agency inexpertise in the area of constitutional interpretation. In *Kentucky Carbon* the Secretary found its original Rule 44 unconstitutional because it permitted a post-reinstatement hearing to reverse the decision only if the ALJ found that the Secretary acted "arbitrarily or capriciously" in requiring reinstatement.[7] The agency found the rule violative of due process in a one page legal analysis citing three Supreme Court cases. To force the mine operators to exhaust administrative remedies on their constitutional claim may prolong application of challenged procedures without benefiting either party. Plaintiffs' failure to exhaust administrative remedies in seeking review of their constitutional claims accordingly does not bar judicial review of their claims.

## VI. Due Process

■ Whether the Commission's Rule 44 violates a mine operator's due process rights by failing to provide for a pre-deprivation hearing is at the heart of these

---

7. This version of Rule 44 was in effect when SOCCO originally brought suit.

controversies. Neither party questions that the mine operators are due some process under the Constitution when a miner claims the opportunity for immediate reinstatement. The Secretary, however, claims that a post-deprivation hearing is sufficient process in light of the (allegedly) overriding governmental interests involved. The mine operators, on the other hand, claim that a post-deprivation hearing is insufficient to protect their Constitutional rights, and that a pre-deprivation hearing is mandated, because they could be compelled to make substantial payments before a decision is made initially as to the potential merit of a claim, and because they could be compelled to reinstate a person who is a danger to himself or to others.

*Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), requires a court to consider three factors to determine whether a particular procedure comports with the requirements of due process:

> (1) The private interests that will be affected by the official action in question;
>
> (2) The risk of an erroneous deprivation of such interests through the procedures involved and the probable value of additional or substitute procedural safeguards; and,
>
> (3) The government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

The final *Eldridge* factor is met in the instant cases. Currently the Secretary is required to give the mine operator a hearing within five days of the temporary reinstatement order. What the mine operators would have this Court require is a pre-deprivation hearing—in other words, the Secretary would have to reverse the order of its procedures and hold a hearing before granting temporary reinstatement. Thus, there would be absolutely no additional fis-

cal or administrative burdens in granting the operators' desired pre-deprivation hearing.

The first and second factors, however, are not as easily answered as the third. On the first factor, the Secretary correctly notes that "[t]he usual rule has been '[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.' "[8] *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974), quoting *Phillips v. Commissioner*, 283 U.S. 589, 596–97, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931). Were the employer permitted in all cases to provide merely economic reinstatement rather than normally being required to provide actual physical reinstatement, the Secretary's argument would be more persuasive. In such a situation, the employer would at most be responsible to pay a miner's salary for some days before it had some opportunity to be heard, or some weeks before a decision were rendered. Normally, however, an employer is required to actually physically reinstate the miner, and only if the *miner* agrees, can the employer limit reinstatement by paying salary.

The SOCCO district court found "compelling" the mine operator's interest in "not being required to employ in a sensitive position a man whom it has discharged." 464 F.Supp. at 456.

> Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency.

*Arnett v. Kennedy*, 416 U.S. 134, 168, 94 S.Ct. 1633, 1651, 40 L.Ed.2d 15 (1974) (Justice Powell, concurring).

This factor is particularly important when, as here, the order does not expire by its own terms at any specific time after it

---

**8.** As noted, the recent Supreme Court opinion in *Cleveland Board of Education v. Loudermill,* —— U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), draws into question this statement of "the usual rule."

issues. Although an operator is given an opportunity to present evidence on its own behalf within five days of the reinstatement, this hearing focuses on whether the miner's complaint was frivolously brought, not whether the complaint is meritorious. Unlike the situation with court imposed *ex parte* temporary restraining orders, which may be imposed for ten days at most, Fed. R.Civ.P. 65(b), the potential exists in this situation for "prolonged retention" of an unsatisfactory or even a dangerously careless employee.

In *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 19, 98 S.Ct. 1554, 1565, 56 L.Ed.2d 30 (1978), the Supreme Court noted that the potential length and severity of deprivation does not always indicate the likelihood of serious loss. In the SOCCO case, for example, because of an undisclosed medical problem, which the Secretary's investigation did not turn up, the miner ordered to be reinstated was apparently not physically capable to put in a day's work and thus the employer was required to accept economic reinstatement. His inability to carry out his duties may not have been immediately apparent, yet he may have reported for work to his own, as well as fellow employees' detriment. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), also presented a situation where an evidentiary hearing before deprivation of a property interest was required.

*Memphis Light* actually combined the first and second *Eldridge* factors by considering the reliability of the procedures underlying the decision when considering the severity of the deprivation involved. Like the situation in *Memphis Light,* the reliability (or unreliability) of the initial procedures leading to an imposition of temporary reinstatement is perhaps a significant weakness in the administrative scheme under scrutiny. All the Secretary need do to force the mine operator to reinstate the discharged miner is find "minimal supporting evidence" in favor of the complainant. As long as the Secretary finds that the complaint was not "frivolously brought," then the Secretary makes an application for temporary reinstatement. The application itself consists only of the miner's complaint, an affidavit setting forth the Secretary's reasons for his finding that the complaint was not frivolously brought, and proof of service on the operator. The application permits no input from the employer, yet as the Supreme Court noted in *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 617, 94 S.Ct. 1895, 1905, 40 L.Ed.2d 406 (1974), questions involved in reinstatement proceedings are "inherently subject to factual determination and adversarial input."

While the interests served in requiring a wrongfully discharged miner to be reinstated are considerable, those interests are no greater than those of an employee wrongfully discriminated against and terminated in a Title VII case, where full backpay, and reinstatement with full seniority, have been held sufficient to right the wrong and protect the important interests Congress sought to be vindicated. These same remedies granted *after* an adversarial hearing would protect the aggrieved miner's interests as these remedies now protect the aggrieved employee's interests in Title VII cases. Indeed, the Supreme Court's most recent pronouncement concerning due process requirements, *Cleveland Board of Education v. Loudermill,* — U.S. —, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), strongly supports the mine operators' arguments that the Secretary should provide them at least some kind of *pre-deprivation* hearing:

An essential principle of due process is that a deprivation of life, liberty, or property "be *preceded* by notice and opportunity for hearing appropriate to the nature of the case." We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." This principle requires "some kind of hearing" *prior* to the discharge of an employee who has a constitutionally protected interest in his employment.

*Id.,* 105 S.Ct. at 1493 (citations omitted) (first and third emphases added). In *Loudermill,* the Court did note that a post-deprivation hearing in some situations may satisfy due process. 105 S.Ct. at 1493 n. 7.[9] But as the Court noted,

> some opportunity for the employee to present his side of these cases is recurringly of obvious value in reaching an accurate decision. Dismissal for cause will often involve factual disputes. Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decision maker is likely to be before the termination takes effect.

*Loudermill* at 1494 (citations omitted). This language is equally applicable to employer situations in which the issue presented is the issue of forced reinstatement rather than the other side of the coin, employee termination. We believe this rationale meets the second factor set out in *Mathews v. Eldridge, supra.* While " 'something less' than a *full* evidentiary hearing is sufficient prior to adverse administrative action," the employers here must be afforded a minimal opportunity to present their side of the dispute before temporary reinstatement is forced upon them. Since the Secretary's Rule 44 fails to insure any reasonable opportunity for at least some minimal pre-deprivation hearing, we hold that it violates the mine operators' due process rights.

While we affirm the judgment of the district courts in both cases accordingly, we note that SOCCO attorneys here ignored the Federal Rules of Appellate Procedure in respect to its brief. Rule 28(g) specifies that briefs *shall not exceed* fifty pages in length without leave of the court; Rule 32(a) specifies that briefs *shall be double spaced.* SOCCO here submitted, without leave of the court, a fifty-eight page brief so spaced that it is roughly equivalent to sixty pages of double spaced text. We do not countenance this subtle disregard of the rules. We therefore deny SOCCO its costs in respect to this appeal and each party in that cause will bear its own costs. We, however, grant *U.S. Coal* its costs, and we affirm the district courts' determination that the regulation and procedures in question are constitutionally deficient.

MERRITT, Circuit Judge, dissenting.

We should not reach the merits of the constitutional claims in this case because the mining companies have not presented their due process arguments against the Commission hearing procedures to the Mine Safety Commission itself and have made no effort to exhaust their administrative remedies. The appeal should be dismissed for failure to exhaust administrative remedies. *Securities and Exchange Commission v. WACO Financial, Inc.,* 751 F.2d 831 (6th Cir.1985), is instructive, and we recently held that a securities broker must raise and exhaust administrative remedies before the SEC in advance of attacking the SEC's procedures on due process grounds. The Administrative Procedure Act, 5 U.S.C. § 706, contemplates constitutional attacks on agencies' procedures before the agency itself and then judicial review of agency decisions on constitutional issues. Surely, such a procedure should be followed here where the provision of the mine safety statute authorizing judicial review of the Mine Safety Commission's actions expressly states that a reviewing court shall not consider any "objection that has not been urged before the Commission." 30 U.S.C. § 816(a)(2). I would, therefore, dismiss this case for failure to present and exhaust before the administrative agency itself the issues respecting the validity of the agency's procedures.

---

**9.** *Loudermill* in one respect supports the Secretary, in that the Court noted "the significance in retaining employment cannot be gainsaid," *id.* at 1494, which it weighed against the competing "governmental interests in the expeditious re-

moval of unsatisfactory employees," and concluded "the governmental interest in immediate termination does not outweigh these interests." *Id.* at 1495.