**ROSA DIAZ, Plaintiff**

v.

**PUEBLO INTERNATIONAL, INC., d/b/a PUEBLO SUPER-MARKET, Defendant**

Civil No. 302/1987

Territorial Court of the Virgin Islands

Div. of St. Croix

March 30, 1988

JEFFREY MOORHEAD, ESQ., St. Croix, V.I., *for plaintiff*

ADRIANE J. DUDLEY, ESQ., St. Thomas, V.I., *for defendant*

PETERSEN, *Judge*

## MEMORANDUM OPINION

This matter is before this Court on Defendant Pueblo International Inc.'s Motion to Dismiss for lack of subject matter jurisdiction. For all of the reasons stated herein, the Motion is Denied.

## DISCUSSION

The issue created by this Motion to Dismiss is whether the recently enacted wrongful discharge statute, 24 V.I.C. § 76 et seq., requires plaintiff to pursue and exhaust administrative remedies before the Virgin Islands Department of Labor prior to seeking redress from the Court.

The Third Circuit Court of Appeals has stated unequivocally that when exhaustion is required by statute, the issue is not subject to

judicial discretion and the courts have no choice but to apply the doctrine. Heywood v. Cruzan Motors, Inc., 792 F.2d 367, 371 (3d Cir. 1986). Indeed the statute involved in the Heywood case did not expressly state that exhaustion of administrative remedies was to become the exclusive remedy. Nonetheless, the Third Circuit determined that the statute did require that administrative remedies first be exhausted when the statute provided for the reconsideration of the agency's decision by the agency and thereafter for further review by the Court.

Like the Heywood statute, the statute involved in this case, 24 V.I.C. § 76 et seq., does not expressly state that the exhaustion requirement applies. However, unlike the Heywood statute, the exhaustion requirement is not as readily ascertainable from the face of 24 V.I.C. § 76 et seq.[1]

Defendant first asserts that a thorough reading of 24 V.I.C. § 76 et seq. leads to the inescapable conclusion than an employee is first to exhaust his administrative remedies, then proceed to Court. In support of its contention, defendant points to § 79 and states that by using the phrase "wrongfully discharged employee" as opposed to "any employee," the Legislature fully intended that a prior

---

[1] Section 77 provides in pertinent part as follows:

(a) Any employee discharged for any reason other than those contained in Section 76 of this Chapter may, within thirty (30) days after discharge, file a written complaint with the Commissioner.

(c) If upon all testimony taken the Commissioner finds that the employer named in the complaint has wrongfully discharged an employee, the Commissioner shall state his findings and shall serve on the employer an order requiring that the employee be reinstated with back pay. If upon all the testimony taken the Commissioner finds that the employee has not been wrongfully discharged, then the Commissioner shall state his findings of fact and shall issue an order dismissing the complaint.

Section 78 provides that:

The Commissioner may request the Territorial Court of the Virgin Islands to enforce any order issued under Section 77 of this Chapter. The findings of the Commissioner with respect to questions of fact shall be considered conclusive if supported by substantial evidence on the record considered as a whole. The court may enforce any order of the Commissioner it deems just and proper and enter a decree enforcing, modifying and enforcing as so modified, or setting aside, in whole or in part, the order of the commissioner.

Likewise, § 79 reads:

In addition to the remedies provided by Sections 77 and 78 of this Chapter, any wrongfully discharged employee may bring an action for compensatory and punitive damages in any court of competent jurisdiction against any employer who has violated the provisions of Section 76 of this Chapter. The court in such action shall award to the plaintiff reasonable attorney's fees and costs of the action, in addition to any judgment in favor of the plaintiff.

determination be made as to whether an employee was wrongfully discharged. Such a determination, defendant argues, must first be made by the Department of Labor. Indeed, § 77(c) authorizes the Commissioner to determine whether an employee, who has filed a complaint with the Department of Labor, was wrongfully discharged. However, the Court finds that the mere fact that the Commissioner is required to make such a finding in and of itself is not indicative that exhaustion is required by the statute.

This Court also recognizes that in the absence of an express mandate that the exhaustion doctrine be applied, this Court may nonetheless find such a requirement in language which permits the plaintiff to obtain review of an adverse agency decision. See for example Heywood, 792 F.2d at 371; and Cyntje v. Joseph, 17 V.I. 285, 287 (Terr. Ct. St. Thomas and St. Croix 1981). As the statute now stands, the only provision which can reasonably be interpreted as providing some review by the Court is § 78 which provides that the Commissioner may request the Court to enforce any order issued under § 77. This section also enables the Court to decree that the Commissioner's order be enforced, modified or set aside in toto or in part. However, this section is not considered by this Court to be fully indicative of the exhaustion requirement.

Moreover, if this Court were to accept defendant's argument that 24 V.I.C. § 76 et seq. required the Commissioner to first determine that the employee was wrongfully discharged, the ability of the discharged employee to obtain any type of review from the Court of an adverse agency decision would be remote. Specifically, if the Commissioner were to find adversely to the employee, the employee would have no opportunity to utilize § 79, because per defendant's reasoning, only an employee found to be wrongfully discharged by the Commissioner can bring suit under § 79.

Courts in a number of jurisdictions have held that where exhaustion is not expressly required by statute, the Court in its discretion may nonetheless apply the doctrine after balancing the interest of the administrative agency in applying its expertise, correcting its own errors, making a proper record and maintaining an efficient and independent administrative system on the one hand against the interests of private parties in findings adequate redress on the other hand. Morrison-Knudsen Co. v. CHG Intern., 811 F.2d 1209, 1223 (9th Cir. 1987); see also Mullins Coal Co. v. Clark, 759 F.2d 1142, 1145 (4th Cir. 1985) (holding that exhaustion allows administrative agencies to act within their sphere of special

competence to apply their expertise and to correct their own errors); and also Southern Ohio Coal Co. v. Donovan, 774 F.2d 693, 701 (6th Cir. 1985), amended and reh'g denied, 781 F.2d 57 (6th Cir. 1986) (which held that the purpose of exhaustion of administrative remedies is to permit an administrative agency to apply its special expertise in interpreting relevant statutes and in developing a factual record without premature judicial intervention).

Section 76 of Title 24 clearly delineates the grounds upon which an employee legally can be discharged and further provides that any employee discharged for reasons other than those stated shall be considered wrongfully discharged. Thus, the ability to determine whether an employee was wrongfully discharged does not require any special knowledge found strictly with the ken or expertise of the Department of Labor. Surely a court of law would be in as good a position as the Commissioner of Labor in reading § 76, listening to the facts of this case and then determining whether the employee's discharge falls under one of the grounds delineated.

Moreover, since there has been no administrative action of which to speak, the Department of Labor should have no particular interest in correcting its own errors or in making a proper record. Morrison-Knudsen, 811 F.2d at 1223; Mullins Coal Co., 759 F.2d at 1145; Southern Ohio Coal Co., 774 F.2d at 701.

On the other hand, this Court has found that the plaintiff has a great interest in obtaining adequate redress for her grievances. She has initiated this suit requesting compensatory and punitive damages to redress her alleged wrongful discharge. Plaintiff did not request reinstatement, which this Court notes is the only remedy that the Department of Labor is authorized to provide. Thus, for this Court to apply the exhaustion doctrine, in the absence of a statutory mandate to so do, would be to require the plaintiff to go through a meaningless administrative procedure before she can seek the relief she actually desires. See Arkla Exploration Co. v. Texas Oil & Gas Corp., 734 F.2d 347, 355 (9th Cir. 1984), cert. denied, 469 U.S. 1158, 105 S.Ct. 905 (1985) (holding that if the agency's limited power to grant relief makes it highly improbable that the litigant will obtain the relief it seeks, exhaustion will not be required); Hessbrook v. Lennon, 777 F.2d 999, 1003 (5th Cir. 1985) (holding that exceptions to the exhaustion requirement are appropriate where the available administrative remedies are unavailable or are wholly inappropriate to the relief sought); Mullins Coal Co. v. Clark, 759 F.2d at 1146 (holding that a litigant

need not exhaust administrative remedies where their pursuit would be a futile gesture).

In furtherance of its contention that the exhaustion requirement is inherent in 24 V.I.C. § 76 et seq. the defendant proffers some legislative history of the statute to show the intent of the legislators in bringing about its enactment. Specifically, defendant relies on testimony taken during an October 10, 1986, hearing on the Wrongful Discharge Bill.

Sutherland Stat. Const. § 48.01 groups legislative history into three areas: the pre-enactment history; the enactment history; and the post enactment history. Thus in light of the fact that the legislative history of 24 V.I.C. § 76 et seq. encompasses much more than the proffered pre-enactment history in the form of testimony taken on October 10, 1986, this Court cannot ipso facto rely solely on that testimony as being dispositive of the intent of the legislators in enacting the Wrongful Discharge Act. Moreover in Austasia Intermodal Lines, Ltd. v. Federal Maritime Commission, 580 F.2d 642, 645 (D.C.A. 1978) the Court held that testimony given at Congressional hearings on contemplated legislation should not be accorded undue weight as an indication of legislative intent since views expressed by witnesses are not necessarily the same as those of legislators ultimately voting on the bill.

The views of the legislators who ultimately voted to pass the Wrongful Discharge Bill are embodied in the December 15, 1986, Regular Session Transcript. A review of this aspect of the legislative history of the act reveals the Sixteenth Legislature's overwhelming concern with providing every wrongfully discharged employee with an opportunity to obtain redress, and not so much with placing limitations on the employee's ability to obtain redress.

This point can be seen clearly in the statements made by the Bill's sponsor Senator Adelbert Bryan who indicated:

> [W]rongful discharge has been a practice here in the Virgin Islands over the years. It has been going on in the hotel industry, the restaurant industry, the retailer's industry—you name it . . . . If they don't like somebody, they send them home. They have no recourse even through the Department of Labor. Except that when they go to Labor, Labor tell[s] them, "Well, we have no remedy."
>
> In Puerto Rico they have wrongful discharge laws, and in many other states in the United States they have wrongful discharge laws. So why shouldn't we protect the employees of

the Virgin Islands when it comes to wrongful discharge? And that is basically what the bill proposes to do; set up the procedural vehicle so that employees that are abused and otherwise kicked around by their employers have some recourse in the employment industry.

The concern of the Senators over the lack of recourse for employees who have been wrongfully discharged is further evident from Senator Virdin Brown's statement that:

> Many of us here . . . have seen many people who had been wrongfully, willfully, disgustingly removed from their jobs, just put out on the whim of an employer without any recourse whatsoever. And the Department of Labor or at least the administrator of the review provisions say "Well, there is nothing we can do about it."
>
> [A]nd look at who is on the unemployment rolls, who is out of a job, who is looking for work, people who have been displaced, who have been put out of [a] job. They should have the opportunity to proper review and if it's just that they should be put back on the job.

Finally Senator John Bell's statements are also reflective of the Legislature's overwhelming concern with providing avenues of redress for wrongfully discharged employees.

> I would like the senior senators, the junior senators and if there are any sophomores in there, all right, . . . imagine, if you may, that in ten (10) years that I have been in the legislature each day there have been at least five people, who have called on me for help; for aid in helping them to get back their jobs because they were wrongfully discharged . . . . But at no time could I turn to any department to get them the proper hearing.

In addition to affording more weight to statements such as the foregoing given by the legislators ultimately voting on the bill, Courts generally are hesitant to resort to similar statements, such as the ones relied on by the defendant, and which were made by committee members or other persons at committee hearings, Northern Colorado Water Conservancy Dist. v. Federal Energy Regulatory Commission, 730 F.2d 1509, 1518 (D.C. Cir. 1984).

■■ Thus this Court cannot agree with the defendant that the legislative history of the Wrongful Discharge Act supports an

interpretation that the legislators intended the exhaustion Doctrine to apply to this statute.

■ Defendant further requests that this case be dismissed pursuant to the Doctrine of Primary Jurisdiction. However, this Court finds that this is not the type of case which would lend itself to the application of the Doctrine. In Far East Conference v. United States, 342 U.S. 570, 574, 72 S.Ct. 492, 494 (1952) the Court defined the doctrine of primary jurisdiction as:

> A principle, now firmly established, that in cases raising issues of fact not within the conventional, experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined.

As was stated earlier in this opinion the statute involved herein does not require any great or special expertise on the part of the Department of Labor in determining and interpreting the issues of facts. Therefore, the Court can determine, as easily as can the Department of Labor, whether the plaintiff herein was wrongfully discharged.

Inasmuch as this Court has found that the exhaustion requirement is not applicable to the instant case, it further must find that the 30-day limitation period for filing a written complaint with the Commissioner under § 77 of Title 24 of the Virgin Islands Code does not apply to bar this cause of action.

Accordingly, this Court finds that Defendant's Motion to Dismiss must be Denied.

## ORDER

IN ACCORDANCE with the attached Memorandum Opinion, it is,

ORDERED that Defendant's Motion to Dismiss be and it is hereby DENIED.