RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0194p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

NATIONAL MINING ASSOCIATION, NATIONAL STONE
SAND AND GRAVEL ASSOCIATION, KENTUCKY COAL
ASSOCIATION, OHIO COAL ASSOCIATION, and
PORTLAND CEMENT ASSOCIATION (13-3324);
MURRAY ENERGY CORPORATION, OHIO AMERICAN
ENERGY, INCORPORATED, AMERICAN ENERGY
CORPORATION, OHIO VALLEY COAL COMPANY, and
KENAMERICAN RESOURCES, INC. (13-3325),

         *Petitioners,*

  *v.*

SECRETARY OF LABOR, MINE SAFETY AND HEALTH
ADMINISTRATION,

         *Respondent.*

Nos. 13-3324/3325

On Petition for Review of a Final Rule of the
Secretary of Labor, Mine Safety and Health Administration;
No. RIN 1219-AB73.

Argued: January 29, 2014

Decided and Filed: August 19, 2014

Before: MOORE and COOK, Circuit Judges; GWIN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Henry Chajet, JACKSON LEWIS LLP, Reston, Virginia, for Petitioners in 13-3324. John W. McCauley, DINSMORE & SHOHL, LLP, Cincinnati, Ohio, for Petitioners in 13-3325. Edward Waldman, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent. **ON BRIEF:** Henry Chajet, Avidan Meyerstein, JACKSON LEWIS

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

1

LLP, Reston, Virginia, for Petitioners in 13-3324.  John E. Jevicky, DINSMORE & SHOHL, LLP, Cincinnati, Ohio, for Petitioners in 13-3325.  Edward Waldman, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent.  Robert Huston Beatty, Jr., DINSMORE & SHOHL LLP, Washington, D.C., Jason M. Nutzman, DINSMORE & SHOHL LLP, Charleston, West Virginia, Michael P. Abate, DINSMORE & SHOHL LLP, Louisville, Kentucky, for Amici Curiae.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge.  This case involves a consolidated challenge by petitioners National Mining Association, National Stone Sand and Gravel Association, Portland Cement Association, Kentucky Coal Association, and Ohio Coal Association ("NMA petitioners") and petitioners Murray Energy Corporation, Ohio American Energy, Inc., American Energy Corporation, Ohio Valley Coal Company, and KenAmerican Resources, Inc., ("Murray Energy petitioners") to the promulgation of a new pattern of violations regulation by the Mine Safety and Health Administration ("MSHA") and Secretary of Labor ("Secretary").  We conclude that we lack jurisdiction over this challenge and therefore dismiss the case without prejudice.

## I. BACKGROUND

The Mine Act was enacted in 1977 in recognition of the "urgent need to provide more effective means and measures for improving the working conditions and practices in the Nation's coal or other mines in order to prevent death and serious physical harm, and in order to prevent occupational diseases originating in such mines."  30 U.S.C. § 801(c).  The Mine Act authorizes the MSHA to promulgate mandatory health or safety standards, conduct regular inspections of mines, and issue citations and orders for violations of the Mine Act or regulations promulgated pursuant to the Mine Act.

The portion of the Mine Act enforcement structure most relevant to this case is the pattern of violations provision:

> If an operator has a pattern of violations of mandatory health or safety standards in the coal or other mine which are of such nature as could have significantly and substantially contributed to the cause and effect of coal or other mine health or

safety hazards, he shall be given written notice that such pattern exists. If, upon any inspection within 90 days after the issuance of such notice, an authorized representative of the Secretary finds any violation of a mandatory health or safety standard which could significantly and substantially contribute to the cause and effect of a coal or other mine safety or health hazard, the authorized representative shall issue an order requiring the operator to cause all persons in the area affected by such violation, except those persons referred to in subsection (c) of this section, to be withdrawn from, and to be prohibited from entering, such area until an authorized representative of the Secretary determines that such violation has been abated.

30 U.S.C. § 814(e)(1). The statute authorizes the Secretary to "make such rules as he deems necessary to establish criteria for determining when a pattern of violations of mandatory health or safety standards exists." 30 U.S.C. § 814(e)(4).

The MSHA promulgated the first pattern of violations rule in 1990. *Pattern of Violations*, 55 Fed. Reg. 31128 (July 31, 1990). MSHA proposed a new pattern of violations rule in 2011. *Pattern of Violations*, 76 Fed. Reg. 5719 (Proposed Feb. 2, 2011). The final rule was issued on January 23, 2013, and codified at 30 C.F.R. Part 104. *Pattern of Violations*, 78 Fed. Reg. 5056 (Jan. 23, 2013).

The NMA petitioners filed their challenge to the pattern of violations rule directly in this court on March 19, 2013. The Murray Energy petitioners filed their challenge to the pattern of violations rule directly in this court on March 20, 2013. We granted the Secretary's motion to consolidate the cases. The Secretary then moved to dismiss the challenge for lack of subject-matter jurisdiction. Mot. to Dismiss at 1–11. The petitioners opposed the motion to dismiss. NMA Opp'n to Mot. to Dismiss at 1–20; Murray Energy Opp'n to Mot. to Dismiss at 1–16. The Secretary's motion was referred to this panel for consideration along with the merits of the case.

On November 16, 2013, the NMA petitioners moved for an emergency stay of the implementation of the pattern of violations final rule. As support for the request, the NMA petitioners noted that Brody Mining LLC—an affiliate company of Patriot Coal, which is a member company of NMA—received a pattern of violations notice and would have to undergo substantial and costly changes to comply with the pattern of violations rule. Mot. for Stay at 1, 14. The Secretary opposed the motion for a stay, arguing that NMA was unlikely to prevail on the merits of its challenge and that granting the stay would endanger the public safety. Opp'n to

Mot. for Stay at 10–16, 18–20.  We denied the motion to stay enforcement of the rule.  Stay Order, No. 13-3324, 13-3325 (Dec. 3, 2013).

## II. JURISDICTION

The Secretary argues that we lack subject-matter jurisdiction to consider this challenge because the Mine Act vested the United States courts of appeals with jurisdiction to review only a "mandatory health or safety standard," 30 U.S.C. § 811(d), and the pattern of violations rule is not a mandatory health or safety standard.[1]  The NMA petitioners and the Murray Energy petitioners argue that we have subject-matter jurisdiction over this case because the Mine Act vests jurisdiction in the United States courts of appeals to review all substantive rulemaking, not only mandatory health or safety standards, or in the alternative, the pattern of violations rule is a mandatory health or safety standard.  NMA Opp'n to Mot. to Dismiss at 1–19; Murray Energy Opp'n to Mot. to Dismiss at 1–16.  We conclude that the pattern of violations rule is not a mandatory health or safety standard and that we lack subject-matter jurisdiction over this challenge.

We begin with the Mine Act statutory scheme.  The Mine Act has an administrative process to review violations of "any mandatory health or safety standard, rule, order, or regulation promulgated" under the Act.  30 U.S.C. § 814(a).  The Mine Act explicitly vests the United States district courts with jurisdiction in two circumstances; the Secretary may request an injunction or restraining order, 30 U.S.C. § 818(a)(1), and the Secretary may institute an action to collect civil penalties owed by a mine operator, 30 U.S.C. § 820(j).  The Mine Act explicitly vests jurisdiction in the courts of appeals in only two situations.  First, a party that is cited for a violation of the Mine Act or its regulations may challenge the citation in a hearing in front of the agency, and then seek judicial review of the agency decision in the United States court of appeals.  30 U.S.C. § 816(a)(1).  Second, "[a]ny person who may be adversely affected by a mandatory health or safety standard promulgated under this section may . . . file a petition

---

[1]The Secretary previously took the position that the federal courts of appeals had jurisdiction to review all regulations promulgated pursuant to the Mine Act, even those regulations that are not mandatory health or safety standards, but changed his position based on Occupational Safety and Health Act caselaw.  Mot. to Dismiss at 8.  However, because "*Chevron* deference does not apply to an agency's interpretation of a federal court's jurisdiction," *Shweika v. Dep't of Homeland Sec.*, 723 F.3d 710, 718 (6th Cir. 2013), the Secretary's change in position is not particularly significant.

challenging the validity of such mandatory standard with the United States Court of Appeals for the District of Columbia Circuit or the circuit wherein such person resides or has his principal place of business, for a judicial review of such standard." 30 U.S.C. § 811(d).

The petitioners argue that the United States courts of appeals may review all substantive rulemaking pursuant to the Mine Act, and that our subject-matter jurisdiction is not limited to review of mandatory health or safety standards. This argument relies heavily on a statement in the decision of the United States District Court for the District of Columbia in *Bituminous Coal Operators' Association v. Marshall*, 82 F.R.D. 350 (D.D.C. 1979). In *Bituminous Coal*, a mine operator brought "a pre-enforcement challenge to an Interpretative Bulletin" issued by the Secretary. *Id.* at 351. The district court analyzed the structure of the Mine Act and noted that while the statute permitted judicial review in the United States courts of appeals of mandatory health or safety standards, it vested jurisdiction in the district court for two types of actions brought by the Secretary, not a mine operator. The district court concluded that it lacked jurisdiction over the case because "[t]he structure of the Act in this instance makes it quite clear that Congress intended that all legal challenges to the Act, to its enforcement and to any regulations promulgated thereunder be heard by the Federal Courts of Appeals, not by the Federal District Courts." *Id.* at 352. However, the district court did not transfer the case to the court of appeals; the district court concluded that the mine operator had to challenge the agency action through the agency review process and then could seek review of the agency decision in the court of appeals. Because the action was not ripe for review, the district court dismissed the complaint. *Id.* at 353–54. The decision was not appealed.

*Bituminous Coal*'s broad statement that Congress intended "all" Mine Act challenges to be heard by the courts of appeals, not the district courts, was relied on by the United States Court of Appeals for the District of Columbia Circuit in support of that court having jurisdiction to review the Secretary's decision to defer implementation of a regulation. *Council of S. Mountains, Inc. v. Donovan*, 653 F.2d 573, 579–80 n.26 (D.C. Cir. 1981). However, the court of appeals stated that the primary reason that it had jurisdiction was because the deferred regulation "was in effect an amendment to a mandatory safety standard," and so jurisdiction was explicitly vested in the United States court of appeals under 30 U.S.C. § 811(d). *Id.*

In *Coal Employment Project v. McLaughlin*, CIV.A. No. 88-0402-LFO, 1988 WL 16300, at *1 (D.D.C. Sept. 27, 1988), relying on *Bituminous Coal*, the District Court for the District of Columbia concluded that it lacked jurisdiction over a challenge that a regulation was facially inconsistent with the Mine Act, and transferred the case to the court of appeals pursuant to 28 U.S.C. § 1631. *Id.* at *2–3. After the case was transferred, the petitioners challenged jurisdiction in the Court of Appeals for the District of Columbia Circuit; that court issued an extremely brief unpublished order stating that "authority to review regulations promulgated pursuant to 30 U.S.C. § 927 resides in courts of appeals, not in district courts." *Coal Emp't Proj.*, Unpublished Order (D.C. Cir. Feb. 6, 1989). However, 30 U.S.C. § 927 does not appear to have existed; presumably this was a typographical error in the order and the statute referred to was 30 U.S.C. § 957, which provides a general grant of rulemaking authority to the Secretary and others "to issue such regulations as each deems appropriate to carry out any provision of this chapter."

"Congress is free to 'choose the court in which judicial review of agency decisions may occur.'" *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (quoting *Five Flags Pipe Line Co. v. Dep't of Transp.*, 854 F.2d 1438, 1439 (D.C. Cir. 1988)). We are not persuaded that Congress chose to locate judicial review of all regulations promulgated pursuant to the Mine Act in the United States courts of appeals. *Bituminous Coal*'s theory that jurisdiction lies in the United States courts of appeals even when Congress did not explicitly vest jurisdiction in that court conflicts with contemporary decisions interpreting the Administrative Procedure Act, which provides that "[t]he form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof . . . in a court of competent jurisdiction." 5 U.S.C. § 703. "Because district courts have general federal question jurisdiction under 28 U.S.C. § 1331, the 'normal default rule' is that 'persons seeking review of agency action go first to district court rather than to a court of appeals.'" *Watts*, 482 F.3d at 505 (quoting *Int'l Bhd. of Teamsters v. Pena*, 17 F.3d 1478, 1481 (D.C. Cir. 1994)). "Initial review of agency decisions 'occurs at the appellate level only when a direct-review statute specifically gives the court of appeals subject-matter jurisdiction to directly review agency action.'" *Nat'l Auto. Dealers Ass'n v. FTC*, 670 F.3d 268, 270 (D.C. Cir. 2012) (quoting *Watts*, 482 F.3d at 505)). The Mine Act did not "specifically

give[]" or "provide[]" the United States courts of appeals jurisdiction to engage in the initial review of regulations that are not mandatory health or safety standards. Accordingly, we conclude that we do not have jurisdiction over this challenge to the pattern of violations rule unless it is a mandatory health or safety standard.

Our conclusion that jurisdiction over initial review of regulations is proper in the district court when the statute does not explicitly vest jurisdiction in the court of appeals is consistent with cases interpreting the Occupational Safety and Health Act (OSH Act). The OSH Act is a useful analogue because the Mine Act review process is modeled on the OSH Act. *Sturm, Ruger & Co. v. Chao*, 300 F.3d 867, 873 (D.C. Cir. 2002). Like the Mine Act, "[t]he OSH Act authorizes the Secretary of Labor to promulgate 'standards' and 'regulations'—two different types of rules." *Workplace Health & Safety Council v. Reich*, 56 F.3d 1465, 1467 (D.C. Cir. 1995). Also like the Mine Act, the OSH Act authorizes a person adversely affected by a "standard" to seek review in the United States courts of appeals, but is silent on the issue of judicial review of "regulations" that are not standards. *Id.* Accordingly, the Court of Appeals for the District of Columbia Circuit concluded that "a party seeking to challenge a 'standard,' as defined in section 652(8), may petition a court of appeals, but a party seeking to challenge a 'regulation' must seek review in the District Court." *Id. See also La. Chem. Ass'n v. Bingham*, 657 F.2d 777, 785 (5th Cir. 1981) ("Congress fashioned two entirely different modes of legal requirements in this statute, with correspondingly distinct methods for review: standards addressed to particular hazards already identified receive direct review in the Courts of Appeals; the important but perhaps less urgent procedures for detection and enforcement must obtain initial review in the District Courts."). Like the OSH Act, because the Mine Act does not explicitly provide for court of appeals jurisdiction for regulations that are not mandatory health or safety standards, we lack subject-matter jurisdiction over the initial review of a rule that is not a mandatory health or safety standard.

We conclude that the pattern of violations rule is not a mandatory health or safety standard. The Mine Act defines "mandatory health or safety standard" as "the interim mandatory health or safety standards established by subchapters II and III of this chapter, and the standards promulgated pursuant to subchapter I of this chapter." 30 U.S.C. § 802(l). The pattern

of violations rule was not established by subchapters II or III of Chapter 22 of Title 30, and so does not satisfy the first clause. The petitioners focus on the second clause in this definition and argue that the pattern of violations rule is a "standard[] promulgated pursuant to subchapter I of this chapter," and thus is a mandatory health or safety standard. We disagree.

First, the pattern of violations rule is unlike the mandatory health or safety standards. The interim mandatory health or safety standards in subchapters II and III impose obligations on mine operators with regard to specifics such as the acceptable levels of dust in the air, 30 U.S.C. § 842(b); what type of medical exam must be available to miners, 30 U.S.C. § 843(a); how to ground high-voltage circuits, 30 U.S.C. § 868; and what information must be included on maps of the mine, 30 U.S.C. § 872. The pattern of violations rule is nothing like these standards. Unlike the standards, which impose obligations on the mine operators, the rule is directed at the Secretary and provides a mechanism to measure mine operators' compliance with the mandatory health or safety standards.

Second, we reject the petitioners' argument that "standards" in the definition of mandatory health or safety standards refers to all rulemaking by the Secretary. The Mine Act does not define "standards." However, the usage of the word throughout the Mine Act demonstrates that "standards" is an abbreviation for "mandatory health or safety standards." *See, e.g.*, 30 U.S.C. § 811(c) (emphasis added) ("Upon petition by the operator or the representative of miners, the Secretary may modify the application of any *mandatory safety standard* to a coal or other mine if the Secretary determines that an alternative method of achieving the result of *such standard* exists . . . or that the application of *such standard* to such mine will result in a diminution of safety to the miners in such mine."); 30 U.S.C. § 814(a) (emphasis added) ("If, upon inspection or investigation, the Secretary or his authorized representative believes that an operator of a coal or other mine subject to this chapter has violated this chapter, or any *mandatory health or safety standard*, rule, order, or regulation promulgated pursuant to this chapter, he shall, with reasonable promptness, issue a citation to the operator. Each citation shall be in writing and shall describe with particularity the nature of the violation, including a reference to the provision of the chapter, *standard*, rule, regulation, or order alleged to have been violated."). Thus, "standards" simply means "mandatory health or safety standard," and does not

refer to all regulations promulgated by the Secretary pursuant to subchapter I, as the petitioners argue.

The petitioners are correct that the pattern of violations rule was promulgated pursuant to 30 U.S.C. § 814(e)(4), which is in subchapter I. However, this does not mean that the rule is necessarily a "standard[] promulgated pursuant to subchapter I of this chapter" within the meaning of the mandatory health or safety standard definition, 30 U.S.C. § 802(l). 30 U.S.C. § 811(a), which is also within subchapter I, authorizes the Secretary to "develop, promulgate, and revise as may be appropriate, improved mandatory health or safety standards for the protection of life and prevention of injuries in coal or other mines." Thus, the natural reading of the phrase "standard[] promulgated pursuant to subchapter I of this chapter" is with reference to mandatory health or safety standards promulgated pursuant to § 811(a). The petitioners' argument that this phrase was also meant to include the pattern of violations rule—a regulation that does not impose a mandatory health or safety standard and was promulgated pursuant to a different grant of authority that is also contained in subchapter I—is extremely strained.

We conclude that the pattern of violations rule is not within the definition of a mandatory health or safety standard. Accordingly, we conclude that we do not have jurisdiction to engage in the initial review of this challenge to the pattern of violations rule.

In his motion to dismiss for lack of jurisdiction, the Secretary argued that we certainly did not have jurisdiction, and that the federal district court may not have jurisdiction, either. The Secretary's motion, submitted prior to briefing, argued that the proper forum for the challenge depended on the nature of the petitioners' challenge to the pattern of violations rule. He argued that the district court would be the proper venue for "an argument that the Secretary failed to comply with the procedural requirements of the Administrative Procedure Act," whereas "an argument that the [pattern of violations] rule exceeds the Secretary's authority under Section 104(e) of the Mine Act may be 'of the type Congress intended to be reviewed within [the Mine Act's] statutory structure,' [*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994)[2]], and

---

[2]In *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), the Supreme Court held that the Mine Act's comprehensive administrative review process precluded district court jurisdiction over a pre-enforcement challenge to an MSHA order. *Id.* at 207–16. The Court held that the text, structure, and legislative history indicated that a mine operator could not circumvent the administrative review process by challenging an order of the MSHA by

therefore subject to review only when raised as a defense to an enforcement proceeding brought by the Secretary before the Commission." Mot. to Dismiss at 10. The petitioners argued that the Mine Act does not preclude jurisdiction over this challenge, and both sets of petitioners briefly stated that if the court of appeals lacks jurisdiction over this appeal, the case should be transferred to the district court. NMA Opp'n to Mot. to Dismiss at 19–20; Murray Energy Opp'n to Mot. to Dismiss at 14 n.3.

When we lack jurisdiction over a civil action, in lieu of dismissing the case we may transfer the case to the proper court pursuant to 28 U.S.C. § 1631, which provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

Although both sets of petitioners state that if we lack jurisdiction we should transfer the case to the district court, neither set of petitioners has explained why doing so would be "in the interest of justice." *Id.*; *see Cosmichrome, Inc. v. Spectra Chrome, LLC*, 504 F. App'x 468, 472 & n.4 (6th Cir. 2012) (holding that the district court's failure to transfer the case to a different district court was not an abuse of discretion when "no compelling reason for a transfer was raised."). Nor does either set of petitioners identify the district court where "the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. Given that the petitioners are national trade associations and corporations located across the country, it is far from clear where this case could have been brought originally.

---

filing for an injunction in the federal district court; the Court noted that it had "upheld district court jurisdiction over claims considered wholly collateral to a statute's review provisions and outside the agency's expertise, particularly where a finding of preclusion could foreclose all meaningful judicial review," *id.* at 212–13 (internal quotation marks and citations omitted), but held that Congress intended a suit of this type to proceed through the administrative review process, *id.* at 213–16.

For these reasons, even if the Mine Act administrative review scheme did not preclude the district court's jurisdiction, we would nonetheless decline the request to transfer the case pursuant to 28 U.S.C. § 1631. Consequently, we need not reach the question of whether the district court's jurisdiction over this challenge is precluded by the Mine Act administrative review scheme.

## III. CONCLUSION

For the foregoing reasons, we **DISMISS** the case without prejudice for want of subject-matter jurisdiction.